in determining whether McCurry and Turner timely commenced their state court wrongful death suit.  *Cf. Chapman v. King*, 572 S.W.2d 925 (Tenn. 1978) (citing a variety of factual and equitable considerations in determining whether a wrongful death suit brought by the wrong party was barred by the statute of limitations); *Gogan v. Jones*, 273 S.W.2d 700 (Tenn. 1954) (same).  Accordingly, I would hold that the potential for interference with state court proceedings provides an additional basis for reversing the District Court's grant of Rule 60(b) relief.

### IV.  *CONCLUSION*

For the reasons set forth above in all but Part III.D of this opinion, we REVERSE the District Court's decision to grant postjudgment relief under Rule 60(b)(6), and VACATE the May 17, 2000 order through which the lower court awarded this relief.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2002 FED App. 0261P (6th Cir.)
File Name:  02a0261p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

SONDRA MCCURRY, as Mother and next Friend of Frank E. Turner, Deceased; VICKI TURNER, Surviving Spouse of Frank E. Turner, Deceased,
     *Plaintiffs-Appellees,*

No. 00-5837

     *v.*

ADVENTIST HEALTH SYSTEM/SUNBELT, INC., a/k/a Takoma Adventist Hospital; TAKOMA MEDICAL GROUP ASSOCIATED; WILLIAM A. HAMILTON, M.D.; RICHARD J. AASHEIM, M.D.; LEONARD GARDBERG, M.D.; GORDON MARSA, M.D.,
     *Defendants-Appellants.*

Appeal from the United States District Court
for the Eastern District of Tennessee at Greeneville.
No.  98-00278—Thomas G. Hull, District Judge.

Argued:  August 7, 2001

Decided and Filed:  August 2, 2002

Before:  MOORE and COLE, Circuit Judges; ROSEN, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** Francis L. Lloyd, Jr., LONDON & AMBURN, Knoxville, Tennessee, for Appellants.  Janice H. Snider, Morristown, Tennessee, for Appellees. **ON BRIEF:** Francis L. Lloyd, Jr., LONDON & AMBURN, Knoxville, Tennessee, Jeffrey M. Ward, MILLIGAN & COLEMAN, Greenville, Tennessee, for Appellants.  Janice H. Snider, Morristown, Tennessee, Cathy H. Morton, MEARES - MORTON LAW OFFICES, Maryville, Tennessee, for Appellees.

ROSEN, D. J., announced the judgment of the court, and delivered an opinion in which MOORE and COLE, JJ., concurred except as to Part III.D.

_____

**OPINION**

_____

ROSEN, District Judge.

## I. *INTRODUCTION*

This case began as a wrongful death action, but has detoured into a procedural thicket.  It was commenced on August 31, 1998 by Plaintiff/Appellee Sondra McCurry, who alleged that her son, Frank E. Turner, died as a result of the negligence of the Defendant/Appellant hospital, medical

_____

[*] The Honorable Gerald E. Rosen, United States District Judge for the Eastern District of Michigan, sitting by designation.

this award.  The foregoing discussion establishes, in essence, that postjudgment relief was inappropriate in this case because of what it did *not* do — *i.e.,* affect any matter at issue in the federal suit.  I would hold that this award also was inappropriate for what it *did* do (or at least was intended to do) — *i.e.,* influence the outcome of a matter before the state court.

One of the most striking features of this case, in my view, is that a litigant would invoke the Federal Rules of Civil Procedure for the deliberate purpose of circumventing a substantive state policy — here, the Tennessee statute of limitations governing wrongful death actions.  While McCurry and Turner (and their counsel) are perhaps to be admired for their candor, the stated mission of their postjudgment motion was flatly at odds with the limited jurisdiction of the federal courts.  In particular, I do not believe that Rule 60(b) may be invoked to throw the weight of the District Court behind one side or another on an issue pending before a state court.  To conclude otherwise in this case would bespeak a mistrust of the Tennessee courts' capacity to properly interpret the federal court record and the District Court's order of dismissal.

Considerations of comity and federalism strongly counsel against any such federal court interference in matters before the state court.  *See Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431, 102 S. Ct. 2515, 2521 (1982) (recognizing a "strong federal policy against federal-court interference with pending state judicial proceedings," grounded in notions of comity and federalism).  This reluctance should be even greater where, as here, a litigant arguably has engaged in a "race to the courthouse," seeking a favorable ruling from the federal court before the state court can reach the issue.  Indeed, under the circumstances presented here, the state court is in a far superior position to interpret and apply the controlling Tennessee law, to resolve any outstanding factual issues, and to weigh any equitable considerations that might be involved

**D.   The District Court Erred in Awarding Postjudgment Relief Which Was Sought for the Express Purpose of Influencing the State Court Litigation.**

Apart from the reasons identified in the opinion of the Court for reversing the District Court's grant of Rule 60(b) relief, I write separately to express an additional concern with

---

however, entertained a subsequent request for further relief, even though no one questioned its prior ruling as to lack of jurisdiction. It then ordered the joinder of an admittedly non-diverse party, Vicki Turner, whose presence in the case surely would have deprived the lower court of any subject matter jurisdiction it previously possessed.

This procedure seemingly was contrary to the terms of Federal Rule of Civil Procedure 19, which governs the compulsory joinder of parties. Subsection (a) of this Rule instructs that necessary parties "shall be joined" in an action, but only if, among other things, this "joinder will not deprive the court of jurisdiction." Fed. R. Civ. P. 19(a). If such a party cannot be joined in the action, whether for jurisdictional or other reasons, the court must "determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed." Fed. R. Civ. P. 19(b). The plain language of this Rule, then, appears to preclude the procedure advocated by McCurry and Turner and employed by the District Court — namely, joinder of a non-diverse party, which in turn mandates dismissal for lack of jurisdiction. Rather, the Rule seemingly contemplates that such a party *cannot* be joined, as this would defeat the court's subject matter jurisdiction, and it instead directs the court to inquire whether the case should continue absent this joinder or should be dismissed as lacking an indispensable party.

Our precedents, however, are not entirely clear as to whether an indispensable yet non-diverse party can or cannot be joined prior to the dismissal of a suit. In *Jenkins v. Reneau*, 697 F.2d 160, 163 (6th Cir. 1983), for example, we affirmed the dismissal of a suit for lack of an indispensable party, but stated that "it was not necessary" for this indispensable, non-diverse party to be joined prior to dismissal. By contrast, we stated in *Schuckman v. Rubenstein*, 164 F.2d 952, 956 (6th Cir. 1947), *cert. denied*, 333 U.S. 875 (1948), that if the joinder of an indispensable party would "destroy[] diversity of citizenship, he must nevertheless be joined as a party with the resulting loss of jurisdiction by the trial court." In light of our disposition of this appeal on other grounds, we need not attempt to resolve this difficult, somewhat metaphysical issue of joinder under Rule 19.

group, and physicians. McCurry alleged in her complaint that the case fell within the federal courts' diversity jurisdiction, as she was a North Carolina resident and Defendants all were citizens of Tennessee. Defendants responded that McCurry lacked standing under the governing Tennessee wrongful death statute, and that the proper plaintiff — Mr. Turner's surviving spouse, Plaintiff/Appellee Vicki Turner, a Tennessee resident — lacked the requisite diversity of citizenship to pursue this action in federal court. The District Court agreed on both scores, and dismissed this suit in an order dated March 12, 1999.

The case was not over, however. Instead, on March 9, 2000, just short of a year after the order of dismissal was entered, Plaintiff McCurry moved for relief from this order under Fed. R. Civ. P. 60(b)(1) and (b)(6), asking that Vicki Turner be substituted or joined as a party plaintiff in this action. In so moving, McCurry acknowledged that this relief would not cure the lack of subject matter jurisdiction recognized in the District Court's March 12, 1999 order — and, indeed, as they appear before us, the parties are in agreement that the federal courts cannot address the merits of this case. Nevertheless, in an order dated May 17, 2000, the District Court granted the relief sought by McCurry, invoking Rule 60(b)(6) as a basis for amending its prior order of dismissal to reflect the addition of Vicki Turner as a party.

Defendants now appeal, arguing: (i) that the District Court was without power to grant post-dismissal relief that did not cure the jurisdictional defect found in the Court's prior order of dismissal; (ii) that, even if the lower court possessed such authority, it erred in granting relief under Rule 60(b)(6) without first considering, and rejecting, Plaintiff McCurry's request for relief under Rule 60(b)(1); and (iii) that the District Court's ruling was, in effect, an advisory opinion on an issue of state law that has been raised in related proceedings in the Tennessee courts. We agree that the District Court inappropriately awarded relief under Rule 60(b)(6), and therefore reverse.

## II.  *FACTUAL AND PROCEDURAL BACKGROUND*

### A.   The Underlying Wrongful Death Action

As noted at the outset, this case began as a wrongful death suit, filed in the District Court on August 31, 1998 by Plaintiff/Appellee Sondra McCurry as mother and next friend of the decedent, Frank E. Turner.  In her complaint, McCurry alleged that the Defendants — the Takoma Adventist Hospital in Madison, Tennessee, the Takoma Medical Group, and four physicians who practice in Greeneville, Tennessee — deviated from the accepted standards of professional medical practice in treating Frank Turner's conditions, diabetic ketoacidosis and new onset diabetes.  McCurry asserted that, as a result of Defendants' negligence, her son was provided inadequate medical care on several occasions in mid-October of 1997, leading to a coma, cardiac arrest, severe brain injury, acute renal failure and, ultimately, his death on October 27, 1997.

By commencing this suit in August of 1998, McCurry seemingly satisfied the applicable Tennessee statute of limitations, under which wrongful death actions must be brought within a year after they accrue.  *See* Tenn. Code Ann. § 28-3-104; *see also Hathaway v. Middle Tennessee Anesthesiology, P.C.*, 724 S.W.2d 355, 357 (Tenn. Ct. App. 1986).  It further appeared, and McCurry affirmatively alleged in her complaint, that the case fell within the District Court's diversity jurisdiction, as McCurry is a North Carolina resident and all of the Defendants are citizens of Tennessee.

### B.   The District Court's Dismissal of the Action

Upon being served with an amended complaint in the fall of 1998, Defendants elected not to file an answer, but instead moved for the dismissal of the suit for failure to state a claim and for lack of subject matter jurisdiction.  In support of their November 5, 1998 motion, Defendants advanced two arguments.  First, they contended that McCurry was not the real party in interest because, under Tennessee law, a

order of dismissal, and which cannot possibly alter the pertinent procedural background of this case.  Regardless of how the District Court ruled on McCurry's and Turner's Rule 60(b) motion, there is no getting around the brute historical facts that McCurry alone instituted the federal suit, and that Turner was not named as a party.  Nor, on the other hand, can any award of postjudgment relief alter the statements in the record as to:  (i) Defendants' position at the outset of these proceedings that Vicki Turner, and not Sondra McCurry, was the real party in interest in the wrongful death action arising from Frank Turner's death; and (ii) the District Court's acceptance of this position as one of the bases for its order of dismissal.  Finally, to the extent that factual questions remain that might conceivably have a bearing upon the timeliness of the state court suit — *e.g.,* questions regarding the motives behind, and the persons responsible for, the decision to name Sondra McCurry as the sole plaintiff in the federal suit — the District Court did not purport to make findings on these issues, and its postjudgment ruling did nothing to resolve them.

As to all of these historical facts and outstanding questions, it is within the exclusive province of the Tennessee courts to determine their legal significance to the survival and timeliness of McCurry's and Turner's state court wrongful death action.  If it could be said that some inaccuracy in the federal court record or proceedings threatened to unduly prejudice the state court litigation, it might be appropriate to correct such a defect through Rule 60 or some other means.  Yet, no such inaccuracy or ambiguity has been identified.  We find, therefore, that the award of Rule 60(b)(6) relief in this case did not serve the interests of substantial justice, and that the District Court abused its discretion in granting this relief.[4]

---

[4]Defendants have identified another possible jurisdictional or procedural defect in the District Court's postjudgment ruling.  Ordinarily, if a federal court determines that it lacks subject matter jurisdiction, as the court below did in its March 12, 1999 order, it must dismiss the case and proceed no further.  *See* Fed. R. Civ. P. 12(h)(3).  The District Court,

judgment of dismissal entered, on any ground not concluding the right of action, the action may be refiled [within] one year after the dismissal." *Cronin v. Howe*, 906 S.W.2d 910, 911 (Tenn. 1995) (citing Tenn. Code Ann. § 28-1-105(a)); *see also Lee v. Crenshaw*, 622 F.2d 202, 203-04 (6th Cir. 1980) (addressing the Tennessee savings statute); Tenn. Code Ann. § 28-1-115 (also allowing a one-year period to refile in the event that a federal court suit is dismissed for lack of jurisdiction). Although McCurry and Turner filed their state court wrongful death suit within a year after the District Court entered its March 12, 1999 order of dismissal, they apparently are concerned that a lack of complete identity between the plaintiffs in this suit — initially, only McCurry — and the plaintiffs in the state court action — both McCurry and Turner — might jeopardize their appeal to the one-year savings statute. Through their Rule 60(b) motion, McCurry and Turner sought to establish this complete identity by joining Ms. Turner as a plaintiff in the federal action, and the District Court granted this relief in the May 17, 2000 order now on appeal.

Given this ruling's lack of impact upon any matter at issue in *this* case — and, indeed, it does not appear that there *were* any outstanding issues in this case at the time of the ruling — it is extremely doubtful whether the circumstances permitted an exercise of the District Court's limited jurisdiction over actual cases and controversies. To be sure, the authority conferred upon a District Court under Rule 60(b) is broad enough to permit relief from any sort of final order or judgment, even one which rests upon a jurisdictional ground; we do not mean to suggest that jurisdictional rulings are especially immune from reconsideration. It is far less certain, however, that the Rule would authorize relief that does nothing to cure a defect in subject matter jurisdiction that was identified in the preceding order or judgment.

In any event, we are quite sure that the circumstances of this case did not justify an award under Rule 60(b)(6) which, in the end, offers no discernable relief from the underlying

surviving spouse is presumptively the proper party to bring a wrongful death action. Second, they pointed out that the surviving spouse of Frank Turner, Vicki Turner, was a Tennessee resident, so that complete diversity of citizenship would have been lacking — and, hence, the District Court would have lacked subject matter jurisdiction — if the suit had been brought by Ms. Turner.

In response, McCurry noted that a surviving spouse may waive her right to bring a wrongful death action, and she claimed that Ms. Turner had done so. In particular, McCurry produced an affidavit in which Vicki Turner acknowledged her awareness of McCurry's suit, and declared her intention not to interfere with this suit or to "file a wrongful death action in any court in my capacity as surviving spouse of Frank E. Turner unless this suit is dismissed." (Vicki Turner Aff. at ¶ 3, J.A. at 67.) Under these circumstances, McCurry asserted that the right of action devolved to her as Mr. Turner's next of kin, since Mr. Turner had no children.

Before ruling on Defendants' motion to dismiss, the District Court entered an order allowing Defendants to depose Sondra McCurry and Vicki Turner on the issues relating to standing and jurisdiction. These depositions revealed: (i) that McCurry and Ms. Turner had discussed the possibility of bringing a wrongful death action; (ii) that Ms. Turner first raised the issue of filing such a suit, obtained her deceased husband's medical records, and consulted with counsel on this matter; (iii) that she then invited McCurry to travel to Tennessee to meet with counsel; (iv) that, through these discussions, the two women jointly decided to pursue a wrongful death action; (v) that they further determined that McCurry should bring this suit, as she was deemed the "more stable" of the two women, (Vicki Turner Dep. at 29, J.A. at 120); (vi) that McCurry and Ms. Turner agreed that they would share in any recovery, with Turner receiving sixty percent and McCurry getting the remaining forty percent; and (vii) that McCurry intended to involve Ms. Turner in any decisions made during the litigation, and would not accept

any settlement offer without first discussing it with Ms. Turner and reaching an agreement.

Following this limited discovery, the District Court entered an order on March 12, 1999 granting Defendants' motion to dismiss, and dismissing this suit without prejudice. In this order, the Court accepted Defendants' contentions as to both standing and subject matter jurisdiction:

A surviving spouse, who knows that he has a right of action for wrongful death, waives his right when he fails to maintain control over it by either effecting a compromise or bringing the action to trial. When a surviving spouse knowingly waives his or her right of action for wrongful death, he or she also waives his or her right to collect any proceeds from the wrongful death action.

In this case the plaintiff contends that her son's surviving spouse has waived her right to bring this suit, and because her son had no children, she had standing to bring this suit as next of kin. However, it is undisputed that the surviving spouse in this case, Vicki[] Turner, retained the right to 60% of the proceeds from the wrongful death action, the right to be involved in settlement negotiations, and the right to file a complaint if this complaint should be dismissed. Clearly, there has been no unequivocal waiver of Mrs. Turner's right to exercise control of this wrongful death action, nor a waiver of her right to receive proceeds from this action.

Accordingly, the Court FINDS that the plaintiff has no standing to bring this lawsuit because there has been no valid waiver by her son's surviving spouse to bring this action. Because the surviving spouse is a Tennessee resident as are all the defendants, there is no diversity of citizenship, and this Court lacks jurisdiction of this medical malpractice case.

(3/12/99 Order at 3-4, J.A. at 136-37 (citations omitted).)

be diversity . . . jurisdiction," and that the District Court was "correct in dismissing" the case. (5/15/00 Hearing Tr. at 4, 13, Suppl. J.A. at 4, 13.)

Under these circumstances, the District Court's subsequent grant of relief under Rule 60(b)(6) raises a jurisdictional concern. The power of the federal courts extends only to "[c]ases" and "[c]ontroversies," U.S. Const. art. III, § 2, cl. 1, and this constitutional limitation has been interpreted as precluding the federal courts from issuing advisory opinions. *See North Carolina v. Rice*, 404 U.S. 244, 246, 92 S. Ct. 402, 404 (1971) ("[F]ederal courts are without power to decide questions that cannot affect the rights of litigants in the case before them."); *General Electric Co. v. Local 761, Int'l Union of Elec., Radio & Machine Workers*, 395 F.2d 891, 895 (6th Cir. 1968) ("[T]he duty of this Court is to decide actual controversies by a judgment which can be carried into effect, and not to . . . declare principles or rules of law which cannot affect the matter in issue in the case before it." (internal quotations and citation omitted)). The challenged postjudgment ruling in this case implicates this principle where, as noted, all are agreed: (i) that the federal courts lack subject matter jurisdiction over this wrongful death action; (ii) that, for this and other reasons, the District Court properly dismissed this suit; and (iii) that nothing in the Rule 60(b) relief sought by McCurry and Turner would overcome this lack of jurisdiction. In light of all this, it is evident that the District Court's ruling on the Rule 60(b) motion could have no conceivable bearing upon any claim or issue in the present case.

McCurry and Turner admit as much. Before the District Court, their counsel candidly stated that the "real reason" for their Rule 60(b) motion was to anticipate a statute of limitations defense that Defendants were likely to assert in the state court wrongful death action brought by McCurry and Turner. (5/15/00 Hearing Tr. at 13, Suppl. J.A. at 13.) Tennessee has enacted a savings statute, which "provides that if an action is filed within the statute of limitations and a

**C.  The Award of Rule 60(b)(6) Relief in This Case Did Not Serve the Interests of Substantial Justice.**

In addition to arguing that the District Court failed to consider the applicability of Rule 60(b)(1) before granting relief under subsection (b)(6) of that Rule, Defendants have identified various other reasons why, in their view, the District Court's award of relief was inappropriate.  We address one of these contentions here, as it lends further support to our conclusion that an award of postjudgment relief in this case does not serve the interests of "substantial justice" as required under our precedents.  *See Cincinnati Ins. Co. v. Byers*, 151 F.3d 574, 578 (6th Cir. 1998).

In its March 12, 1999 order of dismissal, the District Court held that Sondra McCurry lacked standing to bring this action, and that the federal courts lacked subject matter jurisdiction over a wrongful death suit brought by the ostensibly proper plaintiff, Vicki Turner, where Ms. Turner and Defendants all were citizens of Tennessee.  Neither of these conclusions is challenged on appeal.  In particular, all are agreed that the federal courts cannot exercise subject matter jurisdiction over a wrongful death action arising from the death of Frank Turner, because the requisite complete diversity of citizenship would be lacking.[3]  It is further acknowledged by all parties that no grant of relief under Rule 60(b) could overcome this jurisdictional defect.  Indeed, at the District Court hearing on the Rule 60(b) motion, counsel for McCurry and Turner conceded that, regardless of the outcome, "there still will not

---

[3]This presumably remains true even though Sondra McCurry arguably has cured her lack of standing by securing an appointment as co-administrator of Frank Turner's estate.  Her fellow administrator is Vicki Turner, a Tennessee resident.  More importantly, the federal statute that confers diversity jurisdiction provides that "the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent."  28 U.S.C. § 1332(c)(2).  Thus, in her capacity as legal representative of the estate of her late son, a Tennessee resident, McCurry would also be deemed a Tennessee resident.

**C.  The District Court's Grant of Relief under Fed. R. Civ. P. 60(b)(6)**

At some point later in 1999 or in early 2000, Sondra McCurry and Vicki Turner discharged their attorneys, J. Anthony Farmer and Paul E. Kaufman, and retained new counsel, Janice H. Snider.[1]  McCurry, Turner, and their new counsel then embarked upon a number of steps designed to reinvigorate the wrongful death suit that had been dismissed in March of 1999.

As part of this effort, Vicki Turner commenced a legal malpractice action against her former attorneys in Tennessee state court.  The complaint in this suit alleged:

The plaintiff consulted with and retained the defendants to represent her concerning the alleged medical malpractice of [Defendants in the present action].  During discussions between plaintiff and the defendants, J. Anthony Farmer erroneously and negligently advised the plaintiff that she had a "Ten Million Dollar" case for medical malpractice which should not be filed in the Circuit Court for Greene County, Tennessee, due to the history of low and conservative jury verdicts returned in that court. Instead, J. Anthony Farmer . . . advised the plaintiff that her suit should be filed in the U.S. District Court in Greeneville, Tennessee, to maximize the potential recovery, even though no legal basis existed at that time to give the federal court jurisdiction of Mrs. Turner's cause of action.  In order to engineer the filing of this suit in federal court, Mr. Farmer sought to manufacture the required diversity of [citizenship] by advising the plaintiff that her mother-in-law, Mrs. Sondra McCurry,

---

[1]Ms. Snider continues to represent Plaintiffs/Appellees in the present appeal.

who was a resident of North Carolina, should file this suit instead of Mrs. Turner.

(J.A. at 178-79.)

McCurry and Turner also began the process of pursuing a wrongful death claim in the Tennessee courts. First, they opened an estate on behalf of Frank Turner, and were appointed as co-administrators of this estate. Next, on March 9, 2000, McCurry and Turner commenced a wrongful death suit in the Circuit Court for Greene County, Tennessee, asserting the same medical malpractice claims that had been made in the federal suit.

That same day — March 9, 2000, just three days short of a year after the District Court had entered its order of dismissal — McCurry and Turner moved for relief from this order under Fed. R. Civ. P. 60(b)(1) and 60(b)(6). Specifically, they sought to amend the federal court complaint to reflect McCurry's status as co-administrator and personal representative of the estate of Frank Turner, and to add Vicki Turner as a party plaintiff in her capacities as surviving spouse, co-administrator, and personal representative. In support of their motion, McCurry and Turner stated that "Vicki Turner is obviously the real party in interest in this litigation under the wrongful death statutes and case law of the State of Tennessee as both the decedent's surviving spouse and the co-administratrix of his estate," (Motion for Relief from Judgment, Br. in Support at 3, J.A. at 148), and they faulted their prior counsel for failing to seek the substitution or joinder of Ms. Turner as a plaintiff. While they acknowledged that the requested amendments would "not preserve this Court's diversity jurisdiction," they nonetheless asserted that this relief "may be necessary to prevent impairment of their right to refile this action in another forum under the Tennessee saving statutes." (*Id.* at 9, J.A. at 154.)

that this might well be characterized as "neglect," yet is not "excusable" within the meaning of Rule 60(b)(1).

Given the precise fit between the circumstances presented here and those addressed in Rule 60(b)(1), and given our conclusion that subsection (b)(1) affords no basis for relief from the District Court's order of dismissal in this case, it clearly would be inappropriate to invoke subsection (b)(6) to grant relief that is foreclosed under subsection (b)(1). We have observed that these two clauses are mutually exclusive, with relief available under subsection (b)(6) only in the event that none of the grounds set forth in clauses (b)(1) through (b)(5) are applicable. *See Olle v. Henry & Wright Corp.*, 910 F.2d 357, 366 (6th Cir. 1990). Were it otherwise, our decisions involving the first five clauses of Rule 60(b) — *FHC Equities*, for example — would lose much of their force, as a party who failed to meet the prerequisites for relief under one of these provisions could simply appeal to the "catchall" of subsection (b)(6).

Certainly, no such rule of recourse can be gleaned from our precedents. To the contrary, we have repeatedly emphasized that Rule 60(b)(6) applies only in exceptional and extraordinary circumstances. The grounds for relief identified in this case, involving straightforward claims of attorney error and strategic miscalculation, do not satisfy this rigorous standard. Consequently, we find that the District Court abused its discretion in granting relief from its order of dismissal under Rule 60(b)(6).[2]

---

[2]Given this determination, we need not consider Defendants' alternative argument that the Rule 60(b) motion, although filed just short of a year after the entry of the order of dismissal, was not "made within a reasonable time" as required under the Rule.

Accordingly, while McCurry and Turner presumably depended upon their counsel to resolve such legal matters as whether the federal court was a proper forum, whether McCurry had standing to bring a wrongful death action, and whether to seek the joinder or substitution of Turner as a plaintiff, this does not mean that any miscalculation as to these issues, and any adverse ruling that resulted, is correctable by resort to Rule 60(b)(1). Rather, the uniform decisions of this and other circuits establish that this provision does not permit litigants and their counsel to evade the consequences of their legal positions and litigation strategies, even though these might prove unsuccessful, ill-advised, or even flatly erroneous. It follows, then, that McCurry and Turner were not entitled to relief under Rule 60(b)(1) from the District Court's order of dismissal.

It is only a short step from this conclusion to the final result urged by Defendants — namely, that the District Court abused its discretion by awarding relief under Rule 60(b)(6). As noted earlier, and as the District Court recognized, subsection (b)(6) of the Rule applies "only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule." *Hopper*, 867 F.2d at 294. Such situations are rare, "because almost every conceivable ground for relief is covered under the other subsections of Rule 60(b)." *Blue Diamond Coal*, *supra*, 249 F.3d at 524 (internal quotations and citations omitted).

So it is here, where the grounds advanced by McCurry and Turner as justifying relief from the District Court's order of dismissal fit quite comfortably within the range of circumstances addressed in Rule 60(b)(1). To the extent that McCurry and Turner cite strategic misjudgments and flawed legal analysis by their counsel as bases for relief, these are most aptly termed "mistakes" — but not of a sort that would warrant relief under subsection (b)(1) of the Rule. Similarly, while McCurry and Turner fault their former counsel for failing to name Ms. Turner as a plaintiff, we have explained

By order dated May 17, 2000, the District Court held that McCurry and Turner had stated a basis for relief under Rule 60(b)(6). In so ruling, the Court noted that the purpose of the requested relief was to "preserve Mrs. Turner's cause of action for the death of her husband" against the possible running of the Tennessee statute of limitations for wrongful death actions. (5/17/00 Order at 2, J.A. at 22.) The Court also recognized that relief should be awarded under Rule 60(b)(6) "only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of [Rule 60(b)]." (*Id.* at 2, J.A. at 22 (quoting *Hopper v. Euclid Manor Nursing Home, Inc.*, 867 F.2d 291, 294 (6th Cir. 1989)).) Without explicitly considering these first five subsections, however, the Court found that exceptional circumstances existed within the meaning of Rule 60(b)(6). The Court reasoned that Defendants had maintained from the outset that Vicki Turner, and not Sondra McCurry, was the proper party plaintiff, so that "substantial justice w[ould] be served" by amending the March 12, 1999 order to add Ms. Turner as a plaintiff. (5/17/00 Order at 3, J.A. at 23.)

Defendants now appeal this award of relief under Rule 60(b)(6). We agree that this relief was unwarranted, and accordingly vacate the District Court's May 17, 2000 order.

### III. *ANALYSIS*

#### A. The Standards Governing This Appeal

The District Court entered its challenged May 17, 2000 order under the authority of Rule 60(b), which provides in relevant part:

> **(b)  Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc.**  On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence

could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.

Fed. R. Civ. P. 60(b). The party seeking to invoke the Rule bears the burden of establishing that its prerequisites are satisfied. *See Jinks v. AlliedSignal, Inc.*, 250 F.3d 381, 385 (6th Cir. 2001).

By providing that a District Court "may" relieve a party from a final judgment or order, Rule 60(b) allows for some discretion in determining whether to grant such relief. Consequently, we review such a decision for an abuse of discretion. *See Blue Diamond Coal Co. v. Trustees of UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir.), *cert. denied*, 122 S. Ct. 643 (2001); *Amernational Industries, Inc. v. Action-Tungsram, Inc.*, 925 F.2d 970, 975 (6th Cir.), *cert. denied*, 501 U.S. 1233 (1991). A finding of an abuse of discretion must rest upon "a definite and firm conviction that the trial court committed a clear error of judgment." *Blue Diamond Coal*, 249 F.3d at 524 (internal quotations and citation omitted). This may occur where, for example, the District Court "applies the incorrect legal standard, misapplies the correct legal standard, or relies upon clearly erroneous findings of fact." *Schenck v. City of Hudson*, 114 F.3d 590, 593 (6th Cir. 1997).

Moreover, in the specific context of relief from a final judgment or order, we recently explained:

(1993). The Court explained that a client, having chosen a particular attorney to represent him in a proceeding, cannot "avoid the consequences of the acts or omissions of this freely selected agent," and that "[a]ny other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney." *Pioneer Inv. Servs.*, 507 U.S. at 397, 113 S. Ct. at 1499 (internal quotations and citations omitted).

Thus, in assessing a claim of excusable neglect, "the proper focus is upon whether the neglect of [the parties] *and their counsel* was excusable." 507 U.S. at 397, 113 S. Ct. at 1499 (emphasis in original). As is fairly evident from our ruling in *FHC Equities*, an attorney's inaction or strategic error based upon a misreading of the applicable law cannot be deemed "excusable" neglect, even though it might well be excusable for the client to rely on the advice of counsel. Other courts have agreed, recognizing that "the case law consistently teaches that out-and-out lawyer blunders — the type of action or inaction that leads to successful malpractice suits by the injured client — do not qualify as 'mistake' or 'excusable neglect' within the meaning of [Rule 60(b)(1)]." *Helm v. Resolution Trust Corp.*, 161 F.R.D. 347, 348 (N.D. Ill. 1995), *aff'd*, 84 F.3d 874 (7th Cir. 1996); *see also United States v. Prairie Pharmacy, Inc.*, 921 F.2d 211, 214 (9th Cir. 1990) (holding that an attorney's "failure to verify the requirements of the law demonstrates attorney malpractice, not excusable neglect under the law of this circuit"); *Pryor v. U.S. Postal Serv.*, 769 F.2d 281, 288-89 (5th Cir. 1985) ("Were this Court to make an exception to finality of judgment each time a hardship was visited upon the unfortunate client of a negligent or inadvertent attorney, even though the result be disproportionate to the deficiency, courts would be unable to ever adequately redraw that line again, and meaningful finality of judgment would largely disappear.").

of standing to sue in the context of a wrongful death action and did not know that a parent had no right to sue in this case. We had no knowledge that Mrs. McCurry was not a proper plaintiff and our attorney never told us there was any risk involved in my mother-in-law being the plaintiff.

(Vicki Turner Aff. at ¶ 6, J.A. at 194-95.)

Yet, these outstanding factual questions do not take this case outside the rule stated in *FHC Equities* and our other Rule 60(b) decisions. If McCurry's and Turner's former attorney was mistaken as to the governing law and his clients relied upon this mistaken advice, *FHC Equities* precludes the use of Rule 60(b)(1) to relieve McCurry and Turner of the consequences of this error. If, on the other hand, their former counsel was fully apprised of the Tennessee wrongful death statutes and deliberately chose a strategy that he deemed advantageous to his clients, we have stated that a Rule 60(b) motion may not be used "as a technique to avoid the consequences of decisions deliberately made yet later revealed to be unwise." *Hopper*, *supra*, 867 F.2d at 294; *see also FHC Equities*, 188 F.3d at 687 ("Where counsel makes a deliberate choice to rely on one legal theory, the party cannot thereafter attempt to be relieved of the consequences of that conscious decision should the theory prove to be unsuccessful." (internal quotations and citations omitted)).

Nor does it matter that any mistake or strategic choice might have been made by McCurry's and Turner's former counsel, rather than by the two women themselves, or that they might have been less than fully informed, knowledgeable and active participants in the decisionmaking process. In addressing a claim of excusable neglect in an attorney's failure to timely file a proof of claim in a bankruptcy proceeding, the Supreme Court stated the general rule that "clients must be held accountable for the acts and omissions of their attorneys." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 396, 113 S. Ct. 1489, 1499

[R]elief under Rule 60(b) is circumscribed by public policy favoring finality of judgments and termination of litigation. This is especially true in an application of subsection (6) of Rule 60(b), which applies only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule. This is because almost every conceivable ground for relief is covered under the other subsections of Rule 60(b). Consequently, courts must apply Rule 60(b)(6) relief only in unusual and extreme situations where principles of equity *mandate* relief.

*Blue Diamond Coal*, 249 F.3d at 524 (internal quotations and citations omitted).

**B. The District Court Erred in Awarding Relief under Rule 60(b)(6) Without First Considering the Applicability of Subsection (b)(1) of the Rule.**

In their motion seeking relief from the District Court's March 12, 1999 order of dismissal, Sondra McCurry and Vicki Turner appealed to subsections (1) and (6) of Rule 60(b). In granting relief under the latter subsection, the District Court acknowledged the principle that this clause applies only under those "exceptional or extraordinary circumstances" that are not addressed in the preceding five subsections of the Rule. (5/17/00 Order at 2, J.A. at 22 (quoting *Hopper*, *supra*, 867 F.2d at 294).) The remainder of the May 17, 2000 order, however, does not address subsection (1) of the Rule, but instead determines only that relief is warranted under subsection (6). On appeal, Defendants assert that this was error. We agree.

Rule 60(b)(1) authorizes relief from a judgment or order on the basis of "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). In their Rule 60(b) motion in the court below, McCurry and Turner cited mistake, inadvertence and excusable neglect as grounds for amending the March 12, 1999 order of dismissal. Specifically, they

contended that they held a "sincere, mistaken belief" that McCurry could properly pursue a wrongful death claim arising from her son's death, and that Ms. Turner's failure to seek joinder or substitution as the "real party in interest" prior to the entry of an order of dismissal was the product of "understandable inadvertence or excusable neglect." (Motion for Relief from Judgment, Br. in Support at 3, J.A. at 148.) All of this, in their view, was attributable to their lack of legal knowledge or background, and their reliance on the "erroneous advice of their former attorney." (Reply Br. in Support of Motion for Relief from Judgment at 3, J.A. at 187.) Likewise, in their brief on appeal, McCurry and Turner assert that "Mrs. Turner's interest in this litigation was not adequately protected by her former attorney." (Appellees' Br. at 23.)

These claims of attorney error and legal malpractice foreclose an award of relief under Rule 60(b)(1). In particular, we recognized in *FHC Equities, L.L.C. v. MBL Life Assurance Corp.*, 188 F.3d 678, 683-87 (6th Cir. 1999), that neither strategic miscalculation nor counsel's misinterpretation of the law warrants relief from a judgment. There, we considered whether the plaintiff could invoke Rule 60(b)(1) to overcome its untimely filing of a notice of appeal. The plaintiff attributed this failure to its counsel's mistaken interpretation of the relevant Federal Rules of Civil Procedure, and argued that this constituted "inadvertence, mistake, or surprise" within the meaning of Rule 60(b)(1). *FHC Equities*, 188 F.3d at 683.

We held otherwise. Initially, we noted that "Plaintiff does not point us to a single case . . . which holds that attorney misinterpretation of the law can constitute 'mistake' under Rule 60(b)(1)." 188 F.3d at 684. In contrast, we identified several cases from other circuits "in which the alleged 'mistake' was the attorney's misinterpretation of the law or a strategy decision," and we observed that the courts in those cases had declined to grant relief under Rule 60(b)(1). 188 F.3d at 685 (collecting cases). We cited, for example, the

decision in *Nemaizer v. Baker*, 793 F.2d 58 (2d Cir. 1986), where the Second Circuit reviewed a District Court's decision to grant relief under Rule 60(b) in order to avoid the apparently unintended *res judicata* effect of a voluntary dismissal with prejudice. The Second Circuit set aside this award, stating that "an attorney's failure to evaluate carefully the legal consequences of a chosen course of action provides no basis for relief from a judgment." *Nemaizer*, 793 F.2d at 62. Based on these authorities, we concluded that the attorney's misinterpretation of the rules in the case before us did not "constitute[] 'mistake' justifying the setting aside of a judgment under Rule 60(b) to permit a second bite at the appeal apple." *FHC Equities*, 188 F.3d at 687.

We find these same principles controlling here. To be sure, the facts and circumstances of this case are not on all fours with those presented in *FHC Equities*. Some question remains in this case as to whether McCurry's and Turner's former counsel made a purely strategic, wholly deliberate decision to name only McCurry as a party, aware of the risk that Defendants might challenge her standing to pursue a wrongful death action; whether counsel instead overlooked the governing Tennessee statutes identifying the proper parties to bring a wrongful death action; or whether counsel held a good faith belief that Ms. Turner had effectively waived her right to bring such an action, thereby permitting Ms. McCurry to do so as Frank Turner's next of kin. Regarding each of these possibilities, there is the further question whether counsel fully informed McCurry and Turner as to the controlling law and the potential consequences of any strategies they might have employed. Ms. Turner has stated that she and McCurry were not so advised:

When Mr. Farmer made the decision to file suit in federal court, he did not explain the procedural aspects of this decision in any meaningful way to either myself or Mrs. McCurry. We were merely told that this was the best way to proceed because the attorney did not want to file suit in state court. We were ignorant of the concept