determination that, in this case, the district court abused its discretion in granting such relief.

**IV.**

Accordingly, the district court's decision to grant post-judgment relief is REVERSED. The case is REMANDED to the district court for the re-entry of final judgment in favor of the defendant-appellants.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0142P (6th Cir.)
File Name: 01a0142p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

BLUE DIAMOND COAL CO.,
           *Plaintiff-Appellee,*

           *v.*

TRUSTEES OF THE UMWA
COMBINED BENEFIT FUND,
           *Defendant-Appellant
           (99-6110),*

SECRETARY OF HEALTH AND
HUMAN SERVICES,
           *Defendant-Appellant
           (99-6111).*

Nos. 99-6110/6111

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 93-00473—Thomas G. Hull, District Judge.

Argued: September 21, 2000

Decided and Filed: May 3, 2001

Before:  BOGGS and SUHRHEINRICH, Circuit Judges;
        ALDRICH, District Judge.[*]

---

**COUNSEL**

**ARGUED:**    Peter Buscemi, MORGAN, LEWIS & BOCKIUS, Washington, D.C., Jeffrey Clair, UNITED STATES DEPARTMENT OF JUSTICE, CIVIL DIVISION, APPELLATE STAFF, Washington, D.C., for Appellants. John R. Leathers, BUCHANAN INGERSOLL PROFESSIONAL CORPORATION, Pittsburgh, Pennsylvania, for Appellee. **ON BRIEF:** Peter Buscemi, MORGAN, LEWIS & BOCKIUS, Washington, D.C., Jeffrey Clair, UNITED STATES DEPARTMENT OF JUSTICE, CIVIL DIVISION, APPELLATE STAFF, Washington, D.C., for Appellants.    John R. Leathers, BUCHANAN INGERSOLL PROFESSIONAL CORPORATION, Pittsburgh, Pennsylvania, Dan D. Rhea, ARNETT, DRAPER & HAGOOD, Knoxville, Tennessee, for Appellee.

---

**OPINION**

---

ALDRICH, District Judge.   Defendant-Appellants, the Secretary of Health and Human Services and the Trustees of the United Mine Workers of America Combined Benefit Fund appeal a district court's order vacating a prior judgment under Fed. R. Civ. P. 60(b)(6).   For the following reasons, we REVERSE the order of the district court and REMAND the case with instructions for the re-entry of final judgment in favor of the defendant-appellants.

---

[*] The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation.

is related to another equitable interest – that parties rely on final judgments once the disputes have been fully and vigorously adjudicated. *See Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 375 (1940) (noting that "Questions of rights claimed to have become vested, of status, of prior determinations deemed to have finality and acted upon accordingly" are important considerations weighed against "an all inclusive statement of a principle of absolute retroactive invalidity"); *Ritter,* 811 F.2d at 1401-02 (noting there is a "greater interest in finality" once a judgment is executed given that parties rely on those outcomes).

In this case, the interest in finality is undisputed. The district court's decision in *In re Blue Diamond Coal Co.,* 174 B.R. 722, disposed of all of Blue Diamond's claims in a fully executed final judgment.   Blue Diamond's appeal was also disposed of by this Court, and the Supreme Court, before the change in decisional law was announced in *Eastern Enterprises.   See In re Blue Diamond Coal Co.,* 79 F.3d 516, *cert. denied,* 519 U.S. 1055.  Moreover, the reliance interest of the Combined Fund on the previous final judgment is substantial.   Four years had elapsed between the district court's declaratory judgment and its subsequent grant of post-judgment relief.   During that time, payments made to the Combined Fund pursuant to the previous decision were used to cover the medical health benefits of numerous retirees. Given the public policy in favor of the finality of judgment, and the length of time between final judgment and Rule 60(b)(6) relief, equity clearly favors adhering to the district court's final judgment.

As a final note, this Court recognizes that the decision to grant Rule 60(b)(6) relief is a case-by-case inquiry that requires the trial court to intensively balance numerous factors, including the competing policies of the finality of judgments and the "incessant command of the court's conscience that justice be done in light of all the facts." *Griffin v. Swim-Tech Corp.,* 722 F.2d 677, 680 (11th Cir. 1984) (citations omitted).   Our decision today is merely a

Rule 60(b)(6) relief where party failed to appeal, but some other party's appeal on same legal grounds was granted). Indeed, one other district court contemplating Rule 60(b)(6) relief for a super reachback company affected by a pre-*Eastern Enterprises* decision has noted the difficulties of basing such relief on the amount of money paid. *See Templeton Coal Co., v. Apfel,* No. TH 93-158-C-T/H, slip op. at 18-19 (S.D. Ind. Nov. 17, 1999) (noting that if Rule 60(b)(6) relief were based solely on amount of money paid, courts would have to establish an appropriate threshold amount for such relief, and whether such relief should be compared against a party's net worth).

Moreover, other interests not contemplated by the district court favor adhering to the final judgment of this case. Courts have noted that Rule 60(b)(6) relief is especially appropriate in cases where the interest in finality is somehow abrogated. *See Adams v. Merrill Lynch,* 888 F.2d 696, 698, 702 (10th Cir. 1989) (holding Rule 60(b)(6) relief appropriate where decisional law concerning dismissed arbitration claims changed while other claims were still pending before the district court); *Ritter,* 811 F.2d at 1401-02 (holding Rule 60(b)(6) relief appropriate where "erroneous final judgment of this court had not been executed")*; Matarese,* 801 F.2d at 106 (holding habeas proceedings have no "conventional notions of finality"); *Overbee*, 765 F.2d at 580 (holding Rule 60(b)(6) relief appropriate where judgment not final). Courts have also granted Rule 60(b)(6) relief when a dispositive change in decisional law occurs while a timely appeal is still pending. *See Batts,* 66 F.3d at 748 n.6 (noting changes in decisional law may justify post-judgment relief where an appeal of the case is pending) *citing Wilson v. Al McCord, Inc.,* 858 F.2d 1469, 1478-79 (10th Cir. 1988); *United States ex rel. Thomas v. Gramley,* 986 F.Supp. 502, 505 (N.D. Ill. 1997) (noting Rule 60(b)(6) relief granted where dispositive change in decisional law occurred while case was pending timely appeal; interest in enhancing efficiency and promoting the smooth flow of litigation justify relief where appeal court is highly likely to reverse decision). This interest in finality

## I.

This appeal arises out of litigation concerning the constitutionality of the Coal Industry Retiree Health Benefit Act of 1992 (the "Coal Act"), 26 U.S.C. §§ 9701-9722. The factual circumstances surrounding the adoption of the Coal Act and its applicability to the plaintiff-appellee, Blue Diamond Coal Company ("Blue Diamond"), have been explained in detail by the Supreme Court in *Eastern Enterprises v. Apfel,* 524 U.S. 498, 504-14 (1998), and by this Circuit in *In re Blue Diamond Coal Co.,* 79 F.3d 516, 518-20 (6th Cir. 1996).

Since the 1930s, the coal industry has been negotiating with the United Mine Workers of America (the "UMWA") concerning employee health benefits. Through a series of collective bargaining agreements, beginning with the Krug-Lewis Agreement of 1946, several funds were established to provide health benefits for coal miner retirees and their families. Benefits were funded on a "pay as you go" basis by assessing a royalty on coal production. Due to numerous circumstances – including an increase in benefits, opt-out provisions in the collective bargaining agreements, the rapid escalation of health care, the retirement of a generation of miners and a decline in coal production – these various health benefit funds faced financial ruin in the late 1980s.

Consistent with a long history of federal mediation between the UMWA and the coal industry, Congress passed the Coal Act to ensure the continuation of medical health benefits to coal miner retirees and their families. This Act consolidated the several health benefit funds into the UMWA Combined Benefit Fund (the "Combined Fund"). Instead of the "pay as you go" funding structure, the Coal Act assigned an individual miner and his eligible dependants to a particular coal company based on criteria such as the length of employment with that company and whether that company participated in previous collective bargaining agreements. Existing coal companies were also required to pay an

additional premium to cover retirees who were "orphaned" when the employers responsible for their health benefits went out of business.

To prevent the consolidation of liability upon a relatively small number of coal producers, the Coal Act also contained what has become known as a "super reachback" provision, 28 U.S.C. § 9706(a)(3). *See Lindsey Coal Mining Co. v. Shalala,* 901 F.Supp. 959, 968 n.2 (W.D. Penn. 1995); *In re Blue Diamond Coal Co.,* 174 B.R. 722, 724 (E.D. Tenn. 1994). Under this provision, companies were assigned the health benefit liabilities of a coal miner retiree based upon his length of employment with that company under pre-1978 collective bargaining agreements. *See* 28 U.S.C. § 9706(a)(3). Consequently, super reachback companies became responsible for health benefits under the Combined Fund despite having opted out of UMWA collective bargaining agreements and previous health benefit funds for many years.

Blue Diamond, a coal mining company located in Knoxville, Tennessee, and a reorganized debtor under Chapter 11 of the Bankruptcy Code, was one of the companies affected by the super reachback provision of the Coal Act. Though Blue Diamond has been in the coal mining business for over fifty years, it has not been party to a UMWA collective bargaining agreement, nor has it employed union labor, since 1964. Nonetheless, under § 9706(a)(3), Blue Diamond was responsible for the health benefits of approximately 1400 living beneficiaries despite having opted out of the collective bargaining agreements assigning health benefit liability almost three decades ago.

Given this retroactive allocation of liability, the constitutionality of the super reachback provision of the Coal Act was highly contested. Blue Diamond was one of the first corporations to test the Act, arguing that such retroactive liability was an unconstitutional taking and a violation of due process. In *In re Blue Diamond Coal Co.,* 174 B.R. 722 (E.D.

refund of premiums from the Combined Fund due to a pre-*Eastern Enterprises* final judgment or settlement. *See* Corrected J.A., vol. 2 (sealed) at 403. The third factor, that the Coal Act directs the Combined Fund to "repay" premiums made in error, is also inapplicable. Under 26 U.S.C. § 9706(f), companies may challenge an assignment of the health benefit liability of a particular coal miner retiree by requesting the Commissioner of Social Security to furnish "detailed information as to the work history of the beneficiary and the basis of the assignment." 26 U.S.C. § 9706(f)(1). Clearly, this section of the Coal Act deals with a review of the particular facts concerning a particular retiree, and does not contemplate the general applicability or constitutionality of the super reachback provision.

Consequently, only the first factor, the amount of money paid by Blue Diamond to the Combined Fund pursuant to the final judgment, is relevant. This Court notes that the amount Blue Diamond has paid to the Combined Fund is significantly larger than any of the other twelve companies which did not receive a refund of premiums due to a final judgment or settlement. Blue Diamond has paid over $ 14.5 million to the Combined Fund in accordance with the final judgment in *In re Blue Diamond Coal Co.,* 174 B.R. 722, whereas the next closest amount paid by any other company is approximately $ 2.4 million. *See* Corrected J.A., vol. 2 (sealed) at 403.

However, the amount of money Blue Diamond has paid to the Combined Fund in this case, though substantial, is not by itself sufficient reason for a district court to grant Rule 60(b)(6) relief. This Court, consistent with other courts, has previously held that "payment of money damages pursuant to the consent judgment simply does not rise to the level of an excessive burden or hardship warranting [] extraordinary relief provided by Rule 60(b)(6)." *Waste Conversion, Inc. v. Kelley,* No. 92-2365, 19 F.3d 1435, 1994 WL 119431, at *4 (6th Cir. April 6, 1994); *see also In re Fine Paper Antitrust Litigation,* 840 F.2d 188, 194 (3d Cir. 1988) (holding "final money judgment" not an extraordinary circumstance meriting

Nor is this Court persuaded that refusal to extend the "same transaction" line of cases to this situation is tantamount to privileging "tort law principles" over the "equal application of constitutional rights." Blue Diamond's Final Br. at 18-19. This Court recognizes that, generally speaking, our system of law does not privilege certain rights, constitutional or not, over others. *See Butz v. Economou,* 438 U.S. 478, 523 (1978) (Rehnquist, J., concurring in part and dissenting in part) ("That the Framers thought some rights sufficiently susceptible of legislative derogation that they should be enshrined in the Constitution does not necessarily indicate that the Framers likewise intended to establish an immutable hierarchy of rights in terms of their importance to individuals."). Such criticism, however, is inapplicable in this case. Our refusal to extend the "same transaction" reasoning is simply a recognition that liability formerly assigned under the super reachback provision of the Coal Act is not a common transaction similar to a car accident or a shareholders agreement. *See Gondeck,* 382 U.S. at 27; *Norman,* 761 P.2d at 717.

In addition to relying on the "same transaction" line of cases, the district court also cites three factors which militate in favor of granting Rule 60(b)(6) relief:

> (1) the amount of money involved (over Fourteen Million from a reorganized Chapter 11 debtor); (2) the unfairness of the fact that Blue Diamond may be the only super-reachback coal company to have paid anything into the Combined Fund; and finally (3) the fact that the Coal Act itself directs the Combined Fund to "repay" premiums paid pursuant to assignments made in error.

*Blue Diamond Coal Co.,* No. 3:93-CV-473, slip op. at 21. However, two of these three factors are inapplicable in this case. The second factor, that Blue Diamond is alone in its payment to the Combined Fund, is a clear error. Documents furnished to this Court on appeal establish that thirteen companies, including Blue Diamond, have not received a

Tenn. 1994), the district court upheld the constitutionality of the Coal Act, entering a final judgment against Blue Diamond and in favor of the government and the Combined Fund. Blue Diamond appealed and this Circuit, consistent with the rulings of other circuit courts to address the issue, upheld the constitutionality of the Act and affirmed the judgment of the district court. *See In re Blue Diamond Coal Co.,* 79 F.3d 516; *see also Davon Inc. v. Shalala,* 75 F.3d 1114 (7th Cir. 1996); *Eastern Enterprises v. Chater*, 110 F.3d 150 (1st Cir. 1997). Blue Diamond then appealed to the Supreme Court, which denied certiorari on January 6, 1997. *See Blue Diamond Coal Co. v. Chater,* 519 U.S. 1055 (1997).

However, on June 25, 1998, the Supreme Court decided *Eastern Enterprises v. Apfel*, 524 U.S. 498 (1998). In that case, Eastern Enterprises, a company assigned liability under § 9706(a)(3), challenged that provision of the Coal Act as a violation of the Takings Clause and due process. The Supreme Court held that § 9706(a)(3) was unconstitutional as applied, but was deeply divided in its reasoning. Writing for a four-justice plurality, Justice O'Connor found that the super reachback provision of the Coal Act amounted to an unconstitutional taking under the Fifth Amendment. *See id.* at 522-38. Justice Kennedy, concurring in part and dissenting in part, refused to extend a Takings Clause analysis to economic legislation that did not impinge a specific property right, and instead found that § 9706(a)(3) was a rare example of congressional legislation running afoul of due process. *See id.* at 547-50. Justice Breyer, writing for a four-justice dissent, agreed with Justice Kennedy that the Takings Clause does not extend to economic legislation such as the Coal Act, but found that § 9706(a)(3) did not violate due process. *See id.* at 554-68.

Consistent with the ruling in *Eastern Enterprises,* the government ended all payment proceedings for the coal companies affected by the super reachback provision of the Coal Act, including Blue Diamond. This included waiving the debt of companies that had failed to pay premiums to the

Combined Fund before the ruling in *Eastern Enterprises,* as well as refunding the premiums of those companies that had made payments into the Combined Fund pursuant to the super reachback provision. However, the government and the Combined Fund refused to refund those companies that had paid premiums pursuant to a pre-*Eastern Enterprises* final judgment or settlement – thirteen companies in all, including Blue Diamond.

By mid-1998, Blue Diamond had paid $14,613,798.08 into the Combined Fund pursuant to the district court's 1994 order. As a result of the decision in *Eastern Enterprises*, Blue Diamond brought a motion under Rule 60(b)(6) of the Federal Rules of Civil Procedure seeking post judgment relief on August 28, 1998. The district court granted the motion, vacated the prior judgment, and restored the case to the active docket. The Combined Fund subsequently sought and was eventually granted certification for interlocutory appeal under 28 U.S.C. § 1292(b). On appeal, both the government and the Combined Fund argue that the district court improperly granted Rule 60(b)(6) relief.

## II.

Rule 60(b) allows a district court to vacate a final judgment for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

with the UMWA. *See Eastern Enterprises,* 524 U.S. at 504-16. In short, Blue Diamond's arguments – that the common history of negotiation between the coal industry and the UMWA leading to the passage of the Coal Act constitutes a "common transaction" – contain no limiting principle analogous to a singular event, such as a car accident, or a singular contract, such as a shareholders agreement. *See Gondeck,* 382 U.S. at 27 (car accident); *Norman,* 761 P.2d at 717 (shareholders agreement).

The district court itself recognized the difficulties of applying the "same transaction" line of cases to the current situation. *See Blue Diamond Coal Co.,* No. 3:93-CV-473, slip op. at 19 (stating "the Court recognizes that this is not a 'same accident' case . . . ."). However, the district court stated "One could argue that all super-reachback companies were part of the same transaction and that their cases have resulted in conflicting judgments." *Id.* This Court cannot accept such an extension of relevant authority. If the circumstances of this case establishes the "same transaction," it is difficult to imagine any company, whose industry is subject to extensive federal regulation, that would not be entitled to Rule 60(b)(6) relief upon a change in the judicial interpretation of the applicable law. For example, the airline industry, the automobile manufacturing industry, and the telecommunications industry are all linked by their respective common histories – histories that include extensive federal regulation and federal involvement. Moreover, changes in the judicial interpretation of the law are common, and necessarily result in divergent judgments. Allowing all these companies to seek Rule 60(b)(6) relief based on the notion that their "common history" led to the passage of a particular law or regulation, which is subsequently invalidated due to a change in judicial interpretation, necessarily resulting in divergent judgments, would render our legal system's strong presumption in favor of the "finality of judgments and termination of litigation" meaningless. *Waifersong Ltd., Inc.,* 976 F.2d at 292.

applicable to the entire transaction was authoritatively clarified." *Id.*

Blue Diamond's arguments, though novel, are not persuasive. While courts might have discretion under Rule 60(b)(6) to resolve divergent judgments in the "same transaction," such reasoning is inapplicable here. As an initial matter, two of the cases cited by Blue Diamond and the district court base much of their justification for post-judgment relief on the outcome-determinative test of *Erie R.R. Co. v. Tompkins,* 304 U.S. 64 (1938). *See Pierce,* 518 F.2d at 723 ("In diversity jurisdiction cases the results in federal court should be substantially the same as those in state court litigation arising out of the same transaction or occurrence."); *First Am. Nat'l Bank,* 111 F.R.D. at 75 (same). Since this case does not deal with divergent results stemming from a choice of a federal rather than a state forum, these cases are clearly distinguishable.

More important, the cases cited by Blue Diamond and the district court involve transactions with a much tighter nexus of common activity, common rights, and common liability than a law passed by Congress to regulate the payment of medical health benefits to the retirees of an entire industry. To be sure, the shared history of the various companies affected by the super reachback provision of the 1992 Coal Act define a fixed and identifiable universe of affected parties. *See* Blue Diamond's Final Br. at 15. However, the nature and extent of the liability formerly imposed by the super reachback provision varies with each particular company's involvement with the several health benefit funds which preceded the Combined Fund. *See Eastern Enterprises,* 524 U.S. at 504-16 (detailing the events leading to the passage of the 1992 Coal Act); *In re Blue Diamond Coal Co.,* 79 F.3d at 519-20 (describing assignment of liability under § 9706 of the Coal Act). Moreover, each company's particular involvement with these previous funds was established over the course of several decades in a series of discrete and separate collective bargaining negotiations

A district court's grant of post-judgment relief under Rule 60(b) is reviewed for an abuse of discretion. *See Browder v. Director, Dep't of Corrections,* 434 U.S. 257, 263 n.7 (1978); *Windsor v. United States Dep't of Justice,* 740 F.2d 6, 7 (6th Cir. 1984). A finding of an abuse of discretion requires "a definite and firm conviction that the trial court committed a clear error of judgment." *Davis v. Jellico Community Hosp., Inc.,* 912 F.2d 129, 133 (6th Cir. 1990) (citations omitted). However, relief under Rule 60(b) is "circumscribed by public policy favoring finality of judgments and termination of litigation." *Waifersong Ltd., Inc. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir. 1992). This is especially true in an application of subsection (6) of Rule 60(b), which applies "only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule." *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990); *see also Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847, 863-64 (1988). This is because "almost every conceivable ground for relief is covered" under the other subsections of Rule 60(b). *Olle,* 910 F.2d at 365; *see also Hopper v. Euclid Manor Nursing Home, Inc.,* 867 F.2d 291, 294 (6th Cir. 1989). Consequently, courts must apply Rule 60(b)(6) relief only in "unusual and extreme situations where principles of equity *mandate* relief." *Olle,* 910 F.2d at 365.

### III.

It is well established that a change in decisional law is usually not, by itself, an "extraordinary circumstance" meriting Rule 60(b)(6) relief. *See Agostini v. Felton,* 521 U.S. 203, 239 (1997) ("Intervening developments in the law by themselves rarely constitute the extraordinary circumstances required for relief under Rule 60(b)(6) . . . ."); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.,* 131 F.3d 625, 628-29 (7th Cir. 1997); *Travelers Indemnity Co. v. Sarkisian,* 794 F.2d 754, 757 (2d Cir. 1986); *Berryhill v. United States,* 199 F.2d 217, 219 (6th Cir. 1952). This principle holds even if a law is invalidated on state or federal

constitutional grounds. *See Batts v. Tow-Motor Forklift Co.,* 66 F.3d 743, 748-49 (5th Cir. 1995) ("Changes in decisional law based on constitutional principles are not of themselves extraordinary circumstances sufficient to justify Rule 60(b)(6) relief."); *Collins v. City of Wichita,* 254 F.2d 837, 838-39 (2d Cir. 1958) (holding that invalidation by the United States Supreme Court of Kansas statute that was basis of previous final judgment insufficient to establish "extraordinary circumstances" to merit Rule 60(b)(6) relief). Instead, courts have relied on an applicable change in decisional law, coupled with some other special circumstance, in order to grant Rule 60(b)(6) relief. *See Ritter v. Smith,* 811 F.2d 1398, 1401 (11th Cir. 1987) ("Our investigation thus leads us to conclude that something more than a 'mere' change in the law is necessary to provide the grounds for Rule 60(b)(6) relief."); *Matarese v. LeFevre*, 801 F.2d 98, 106 (2d Cir. 1986) ("We think it particularly appropriate for the district court to entertain a Rule 60(b)(6) motion . . . in the context of a habeas proceeding in which conventional notions of finality of litigation have no place.") (internal quotes and citations omitted); *Overbee v. Van Waters & Rogers*, 765 F.2d 578, 580 (6th Cir. 1985) (holding that since the judgment was not final, and the Ohio Supreme Court reversing itself within one year was unusual, the district court abused its discretion in not granting Rule 60(b)(6) relief).

The district court bases much of its decision on a line of cases establishing that post-judgment relief can be granted when a change in decisional law generates divergent judgments for litigants involved in the same transaction or injury. *See Blue Diamond Coal Co. v. Secretary of Health and Human Services,* No. 3:93-CV-473, slip op. at 19 (E.D. Tenn. Nov. 4, 1998); *see also Gondeck v. Pan Am. World Airways,* 382 U.S. 25, 27 (1965) (granting post-judgment relief where divergent results for the survivors of two people killed in the same car accident resulted from a circuit split in statutory interpretation); *Pierce v. Cook & Co.*, 518 F.2d 720, 723 (10th Cir. 1975) (granting Rule 60(b)(6) relief where divergent results for two plaintiffs injured in the same car

accident resulted from choice of federal rather than state forum, since federal court based its decision on state law subsequently overturned by Oklahoma Supreme Court in related case); *First Am. Nat'l Bank v. Bonded Elevator, Inc.,* 111 F.R.D. 74, 75 (W.D. Ky. 1986) (granting Rule 60(b)(6) relief where divergent outcomes for two plaintiffs seeking recovery under the same promissory note resulted from choice of federal rather than state forum, since federal court based its decision on state law subsequently invalidated by Kentucky Supreme Court in related case); *Norman v. Nichiro Gyogyo Kaisha, Ltd.*, 761 P.2d 713, 717 (Alas. 1988) (granting post-judgment relief under Alaska rule identical to Rule 60(b)(6) where divergent outcome for two plaintiffs seeking recovery under the same shareholders agreement resulted from subsequently invalidated interpretation of Alaska law in related case).

Blue Diamond argues that this "same transaction" line of cases is applicable in this case. Blue Diamond states "[the] substantially identical . . . historical contractual activity with the UMWA . . . which brought [the coal industry] into the [the super reachback provision's] retroactive grasp" suggests that the numerous coal companies affected by the 1992 Coal Act were multiple parties to a common transaction. Blue Diamond's Final Br. at 15. Blue Diamond further argues that even though the alleged common transaction in this case, the Coal Act, is not a "tortious accident" or "common contract," such authority applies since this Court must not privilege "tort law principles" over the "equal application of constitutional rights." *Id.* at 18-19, *citing Parnell v. Rapides Parish Sch. Bd.*, 563 F.2d 180, 185 (5th Cir. 1977) ("[The Constitution is] not geared to patchwork geography. It tolerates no independent enclaves."). Consequently, Blue Diamond argues, the "same transaction" reasoning is applicable here since "multiple parties injured contemporaneously in a common transaction will receive fundamentally different measures of legal protection . . . solely because . . . their claims went to final adverse judgments before the law