*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0193p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

FORD MOTOR COMPANY,

　　　　　　　　　　*Plaintiff-Appellee,*

　　　*v.*

MUSTANGS UNLIMITED, INC.,

　　　　　　　　　　*Defendant-Appellant.*

> No. 06-1537

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 99-73933—Paul D. Borman, District Judge.

Argued: March 8, 2007

Decided and Filed: May 24, 2007

Before: MOORE and GIBBONS, Circuit Judges; SARGUS, District Judge.[*]

---

## COUNSEL

**ARGUED:** Vincent M. Amberly, LITMAN LAW OFFICES, Arlington, Virginia, for Appellant. Scott R. Ryther, HOWARD, PHILLIPS & ANDERSON, Salt Lake City, Utah, for Appellee. **ON BRIEF:** Vincent M. Amberly, LITMAN LAW OFFICES, Arlington, Virginia, for Appellant. Scott R. Ryther, Gregory D. Phillips, HOWARD, PHILLIPS & ANDERSON, Salt Lake City, Utah, for Appellee.

---

## OPINION

---

　　　KAREN NELSON MOORE, Circuit Judge. Defendant-Appellant Mustangs Unlimited, Inc. ("Mustangs") appeals the district court's order granting Plaintiff-Appellee Ford Motor Company's ("Ford") motion to set aside a consent judgment pursuant to Federal Rule of Civil Procedure 60(b)(6). For the reasons set forth below, we **VACATE** the order of the district court and **REMAND** this case for further proceedings consistent with this opinion.

---

[*] The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

# I. BACKGROUND

The consent judgment at issue in this case resulted from the parties' voluntary settlement of a federal action in which Ford alleged that Mustangs had committed trademark counterfeiting, trademark infringement, trademark dilution, and unfair competition in violation of the Trademark Act of 1946 (also known as the Lanham Act), 15 U.S.C. §§ 1501-1127, and Michigan law. The consent judgment, which was entered on July 2, 2002, permanently enjoined Mustangs from:

    (a)  advertising, marketing, distributing, using, selling and/or offering to sell any merchandise bearing the FORD name and marks which has been purchased or otherwise obtained from any entity which is not licensed by Ford to distribute or sell such merchandise;

    (b)  advertising, marketing, distributing, using, selling and/or offering to sell any merchandise bearing the [Mustang] mark as depicted in two examples in Exhibit A attached hereto; and

    (c)  advertising, marketing, distributing, using, selling and/or offering to sell any merchandise bearing any marks which are confusingly similar to any of the FORD name and marks.

Joint Appendix ("J.A.") at 26 (Consent J. at 6 ¶ 13).

The consent judgment also contained the following provisions:

14. Should Ford discover in the future that Mustangs Unlimited is advertising, marketing, distributing, using, selling and/or offering to sell any merchandise which Ford in good faith believes violates the terms of this Consent Judgment, Mustangs Unlimited agrees to cease advertising, marketing, distributing, using, selling and/or offering to sell such merchandise within thirty (30) days of Ford's written notification to Mustangs Unlimited of the violation.

15. Notwithstanding the terms of Paragraphs 13 and 14 of this Consent Judgment, Ford agrees that Mustangs Unlimited may continue to use the name "Mustangs Unlimited, Inc." as the name of its business.

16. Notwithstanding the terms of Paragraphs 13 and 14 of this Consent Judgment, Ford agrees that Mustangs Unlimited may continue to advertise, market, distribute, sell and/or offer to sell any merchandise bearing the FORD name and marks which has been purchased or otherwise obtained from any entity which is licensed by Ford to distribute or sell such merchandise.

J.A. at 26-27 (Consent J. at 6-7).

On December 5, 2005, Ford moved in the district court to have the judgment set aside pursuant to Federal Rule of Civil Procedure 60(b)(6), claiming that Mustangs had breached the terms of the judgment by "continu[ing] to sell automobile accessories and other merchandise bearing the Ford Trademarks, including specifically the MUSTANG® design mark, the COUGAR® word mark, and the COUGAR® design mark"; "us[ing] the Ford Trademarks in its advertisements, on its product packaging, and on its Internet website"; and "continuing to make unauthorized use of the Ford Trademarks." J.A. at 38 (Pl.'s Mem. in Support of Mot. to Set Aside Consent J. at 3). Ford also alleged that the trademarked Ford products sold by Mustangs are counterfeit—that is, that "the products bear no indication of their source; and . . . neither the products nor their packaging display the seal of authenticity that must be displayed on genuine Ford products." J.A. at 40 (Pl.'s Mem. in Support of Mot. to Set Aside Consent J. at 5). Ford claimed that it notified Mustangs of the alleged violations but that Mustangs continued to engage in the challenged practices.

In opposition to the motion, Mustangs argued that some of the challenged actions had been orally authorized by Ford during the settlement negotiations; that others were inadvertent and had ceased by the time of the motion hearing; and that Ford had failed to fulfill its duty under the consent judgment to provide Mustangs with notice and thirty days to correct any violations. J.A. at 64-66 (Def.'s Resp. to Pl.'s Mot. to Set Aside Consent J. at 5-7). Mustangs further contended that Ford has not shown that "extraordinary" circumstances justified a grant of the requested relief. J.A. at 66 (Def.'s Resp. to Pl.'s Mot. to Set Aside Consent J. at 7).

The district court granted Ford's motion and vacated the consent judgment:

> In this case the Plaintiff, the Court believes, has set aside [sic] reasons that justify relief from the operation of the consent judgment with regard to the Defendant's activities in violation of the consent judgment. And apart from the letter of May 20th, 2005, sent by counsel for Plaintiffs, we also have the fact that this matter was filed, the motion to set aside the consent judgment, December, 2005, and there [have] been continuing violations of the consent judgment and, therefore, the Court will set aside the consent judgment. This means the initial Complaint is operative if the parties wish—or Plaintiff wishes to amend[] the Complaint, the Court will consider that pursuant to the Rules of Civil Procedure. But at this point the Court will set aside the consent judgment and leave parties to proceed further on this matter.
>
> That is the ruling of the Court. The Court will issue an order.

J.A. at 211 (Motion Hr'g Tr. at 22). The district court subsequently issued a summary order granting Ford's motion to set aside the consent judgment, "for the reasons stated on the record." J.A. at 18 (Dist. Ct. Order).

Mustangs now appeals the district court's ruling, arguing that that court abused its discretion by failing to apply the proper standard—namely, a requirement of showing "extraordinary" or "exceptional" circumstances—to Ford's Rule 60(b)(6) motion.

## II. ANALYSIS

### A. Standard of Review

"We review orders granting relief from a prior order under Rule 60(b) for abuse of discretion, but we review questions of law de novo." *United States v. Pauley*, 321 F.3d 578, 581 (6th Cir.), *cert. denied*, 540 U.S. 877 (2003). "A finding of an abuse of discretion requires 'a definite and firm conviction that the trial court committed a clear error of judgment.'" *Blue Diamond Coal Co. v. Trs. of UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir.) (quoting *Davis v. Jellico Cmty. Hosp., Inc.*, 912 F.3d 129, 133 (6th Cir. 1990)), *cert. denied*, 534 U.S. 1054 (2001).

### B. The District Court's Grant of Relief

Rule 60(b) sets forth criteria governing the determination whether relief from judgment is warranted. It provides, in relevant part, as follows:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated

intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

FED. R. CIV. P. 60(b).

"[R]elief under Rule 60(b) is 'circumscribed by public policy favoring finality of judgments and termination of litigation.'" *Blue Diamond Coal Co.*, 249 F.3d at 524 (quoting *Waifersong Ltd. v. Classic Music Vending*, 976 F.3d 290, 292 (6th Cir. 1992)). "This is especially true in an application of subsection (6) of Rule 60(b), which applies 'only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule.'" *Id.* (quoting *Olle v. Henry & Wright Corp.*, 910 F.3d 357, 365 (6th Cir. 1990)); *see also Stokes v. Williams*, 475 F.3d 732, 735 (6th Cir. 2007) (same); *In re Abdur'Rahman*, 392 F.3d 174, 183 (6th Cir. 2004) (en banc) (same)*, vacated on other grounds*, 545 U.S. 1151 (2005); *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 543 (6th Cir.) (same), *cert. denied*, 543 U.S. 837 (2004); *United States v. Pauley*, 321 F.3d 578, 581-82 (6th Cir.) (same), *cert. denied*, 540 U.S. 877 (2003); *McCurry ex rel. Turner v. Adventist Heath System/Sunbelt, Inc.*, 298 F.3d 586, 591 (6th Cir. 2002) (same).

"Courts . . . must apply subsection (b)(6) only as a means to achieve substantial justice when something more than one of the grounds contained in Rule 60(b)'s first five clauses is present." *Olle*, 910 F.3d at 365 (internal quotation marks omitted). "The 'something more' . . . must include unusual and extreme situations where principles of equity *mandate* relief." *Id.* "There are few cases elaborating on the 'something more' that is required. This may be explained . . . by the fact that clauses 1-5 of the Rule cover almost every conceivable ground for relief." *Pruzinsky v. Gianetti (In re Walter)*, 282 F.3d 434, 440 (6th Cir.) (internal quotation marks omitted), *cert. denied*, 537 U.S. 885 (2002).

Several of our sister circuits have held that a breach of a settlement agreement does not, without more, constitute an exceptional or extraordinary circumstance warranting relief under Rule 60(b)(6). *Sawka v. Healtheast, Inc.*, 989 F.2d 138, 140-41 (3d Cir. 1993) ("Assuming *arguendo* that Healtheast breached the terms of the settlement agreement, that is no reason to set the judgment of dismissal *aside*, although it may give rise to a cause of action to *enforce* the agreement."); *Harman v. Pauley*, 678 F.2d 479, 480-81 (4th Cir. 1982) (noting, in affirming a district court's denial of a Rule 60(b)(6) motion, that "when a settlement agreement has been breached two remedies are available—a suit to enforce the agreement or a Rule 60(b)(6) motion to vacate the prior dismissal").[1] *Compare* 12 MOORE'S FEDERAL PRACTICE § 60.48[3][d] (3d ed. 2000) (footnote omitted):

> A number of courts have permitted relief from a judgment entered pursuant to a settlement agreement when, subsequent to the judgment, one of the parties fails to perform according to the terms of the settlement agreement. Relief is not always mandated merely because one party breaches the terms of the settlement agreement, however. If adequate relief is available through a separate lawsuit for breach of the

---

[1] At least two other circuits have, however, held to the contrary. *Keeling v. Sheet Metal Workers Int'l Ass'n, Local Union 162*, 937 F.2d 408, 410 (9th Cir. 1991) ("Repudiation of a settlement agreement that terminated litigation pending before a court constitutes an extraordinary circumstance, and it justifies vacating the court's prior dismissal order."); *United States v. Baus*, 834 F.2d 1114, 1124 (1st Cir. 1987) ("As a legal matter, it is well-accepted that the material breach of a settlement agreement which has been incorporated into the judgment of a court entitles the nonbreaching party to relief from judgment under Rule 60(b)(6)."). The United States Supreme Court has noted, but declined to resolve, this circuit split. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378 (1994).

settlement agreement, the court may leave the parties to that remedy and refuse to set the judgment aside.

*See also id.* ("Relief from a judgment should be available in those rare situations in which a settlement fails, not because of one party's refusal to perform, but for reasons beyond the control of the parties that leave the settlement meaningless.").

In *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368 (6th Cir. 1976), we affirmed a district court's grant of relief under Rule 60(b)(6) upon a finding that a settlement agreement had been breached. *Id.* at 1371. The *Aro* opinion emphasizes the importance of the general policy favoring the enforcement of settlement agreements:

> Agreements settling litigation are solemn undertakings, invoking a duty upon the involved lawyers, as officers of the court, to make every reasonable effort to see that the agreed terms are fully and timely carried out. Public policy strongly favors settlement of disputes without litigation. . . . Settlement agreements should therefore be upheld whenever equitable and policy considerations so permit. By such agreements are the burdens of trial spared to the parties, to other litigants waiting their turn before over-burdened courts, and to the citizens whose taxes support the latter. An amicable compromise provides the more speedy and reasonable remedy for the dispute.

*Id.* at 1372.[2]

The Fourth Circuit, in its *Harman* opinion, correctly characterized the *Aro* holding as follows:

> Harman does cite authority holding that when one party repudiates a settlement agreement, the district court has a duty to vacate its prior judgment under Rule 60(b)(6) and proceed to enforce the agreement when justice requires. In [*Aro*], two companies had settled a claim of patent infringement and a counterclaim through the issuance of a license. The suit was dismissed voluntarily, but when the licensee subsequently refused to make royalty payments, the licensor moved to have the district court vacate its order of dismissal and enjoin the licensee from future nonpayment. The district court granted the motion. The [S]ixth [C]ircuit, in affirming the district court, stated that "the court below had not only the inherent power but, when required in the interests of justice, the duty to enforce the agreement which had settled the dispute pending before it."
>
> Harman appears to misread the dictum in *Aro*. The [S]ixth [C]ircuit clearly states in that case that a district court has a duty to vacate a prior order of dismissal *when required in the interests of justice, not whenever a settlement agreement has been breached. Aro*, therefore, simply stands for the general rule that when considering a Rule 60(b)(6) motion, the trial judge should use his discretion to determine if the granting of such motion would further justice.

---

[2] Our prior opinion in *L.M. Leathers' Sons v. Goldman*, 252 F.2d 188 (6th Cir. 1958), cited by Ford, is not to the contrary. In *Goldman*, we affirmed a grant of relief from judgment where the record reflected that "[t]he District Court was of the opinion that in the interest of justice the consent judgment . . . and the accompanying injunction should be set aside *because of the obvious confusion as to the intention of the parties in connection with the stipulation . . . pursuant to which the judgment was entered.*" *Id.* at 190 (emphasis added). In this case, the district court failed to provide *any* rationale for its grant of relief, and, moreover, Ford does not contend that the consent judgment was the product of any confusion on the part of either party.

*Harman*, 378 F.2d at 481 (emphasis added) (internal citation omitted).

The record before us provides no basis upon which we can hold that the district court acted within its discretion in granting relief from judgment in this case. The transcript of the motion hearing reveals neither an explicit determination by the district court that the circumstances herein are extraordinary or exceptional nor any specific reasoning supporting such a determination. While we do not preclude the possibility that a more searching examination of the facts of this case might justify a grant of relief under Rule 60(b)(6), such an inquiry is, in the first instance, the province of the district court. Upon remand, then, the district court should expressly determine whether—and, if so, how—Ford's evidence establishes extraordinary or exceptional circumstances sufficient to warrant Rule 60(b)(6) relief.

## III.  CONCLUSION

For the reasons set forth above, we hereby **VACATE** the judgment of the district court and **REMAND** this case for further proceedings consistent with this opinion.