**File Name: 11a0259n.06**

**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

**No. 07-2282**

| | |
|---|---|
| **UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT** | **FILED** *Apr 22, 2011* LEONARD GREEN, Clerk |

| | | |
|---|---|---|
| FORD MOTOR COMPANY, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | **ON APPEAL FROM THE** |
| | ) | **UNITED STATES DISTRICT** |
| MUSTANGS UNLIMITED, INC., | ) | **COURT FOR THE EASTERN** |
| | ) | **DISTRICT OF MICHIGAN** |
| Defendant-Appellant. | ) | |
| | ) | |

Before:  MOORE, GIBBONS, Circuit Judges; and SARGUS, District Judge.[*]

**JULIA SMITH GIBBONS, Circuit Judge.**  Mustangs Unlimited ("Unlimited") appeals the order of the district court granting Ford Motor Company's ("Ford") motion to set aside a previously entered consent judgment pursuant to Federal Rule of Civil Procedure 60(b)(6).  This panel previously reversed and remanded a similar order of the district court in *Ford Motor Co. v. Mustangs Unlimited, Inc.*, 487 F.3d 465 (6th Cir. 2007) (*Mustangs Unlimited I*).  For the following reasons, we affirm the district court's decision.

I.

Ford uses a variety of trademarks in conjunction with its business, including the names Ford, Mustang, Cougar, and Cobra, as well as illustrative designs and decals.  Ford has placed its marks on merchandise ranging from automobile accessories to clothing.  The company spends millions of dollars each year to promote its products, and as a result its marks are now famous.  Subsequent to

---

[*] The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

- 1 -

Ford's adoption and first use of its marks, Unlimited began to market and sell automobile accessories and other merchandise, including items that bore various Ford marks.

In August 1999, Ford filed a complaint against Unlimited in federal court, alleging counterfeiting, trademark infringement, trademark dilution, and unfair competition under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, and Michigan state law. In July 2002, the parties voluntarily settled the federal action by entering into a consent judgment. Accordingly, the district court dismissed the case without prejudice.

The 2002 consent judgment permanently enjoined Unlimited from:

> advertising, marketing, distributing, using, selling and/or offering to sell any merchandise bearing the FORD name and marks which has been purchased or otherwise obtained from any entity which is not licensed by Ford to distribute or sell such merchandise . . . advertising, marketing, distributing, using, selling and/or offering to sell any merchandise bearing the [Mustang] mark as depicted in two examples in Exhibit A attached hereto; and . . . advertising, marketing, distributing, using, selling and/or offering to sell any merchandise bearing any marks which are confusingly similar to any of the FORD name and marks.

It also contained the following provisions:

> 14. Should Ford discover in the future that Mustangs Unlimited is advertising, marketing, distributing, using, selling and/or offering to sell any merchandise which Ford in good faith believes violates the terms of this Consent Judgment, Mustangs Unlimited agrees to cease advertising, marketing, distributing, using, selling and/or offering to sell such merchandise within thirty (30) days of Ford's written notification to Mustangs Unlimited of the violation.
>
> 15. Notwithstanding the terms of Paragraphs 13 and 14 of this Consent Judgment, Ford agrees that Mustangs Unlimited may continue to use the name "Mustangs Unlimited, Inc." as the name of its business.
>
> 16. Notwithstanding the terms of Paragraphs 13 and 14 of this Consent Judgment, Ford agrees that Mustangs Unlimited may continue to advertise, market, distribute, sell and/or offer to sell any merchandise bearing the FORD name and marks which has been purchased or otherwise obtained from any entity which is licensed by Ford to distribute or sell such merchandise.

In December 2005, Ford moved to set aside the consent judgment pursuant to Rule 60(b)(6), alleging that Mustang "blatantly and repeatedly flouted" the consent judgment. Specifically, Ford alleged that Unlimited had continued to sell counterfeit automobile accessories and other merchandise bearing Ford trademarks and that such "open[] flouting" of the consent judgment's terms warranted action under Rule 60(b)(6). To support its allegation, Ford offered evidence of various counterfeit products that Unlimited had either listed for sale on its website or sold to investigators working for Ford. After a hearing, the district judge issued a decision setting aside the consent judgment pursuant to Rule 60(b)(6) because of "[Unlimited's] activities in violation of the consent judgment."

On appeal, this panel vacated that order and remanded the case for further proceedings. *Mustangs Unlimited I*, 487 F.3d at 466. The panel emphasized that circuit precedent holds that "a district court has a duty to vacate a prior order of dismissal when required in the interests of justice, not whenever a settlement agreement has been breached." *Id.* at 470 (quoting *Harman v. Pauley*, 678 F.2d 479, 481 (4th Cir. 1982)) (emphasis omitted). Finding that the record "reveals neither an explicit determination by the district court that the circumstances herein are extraordinary or exceptional nor any specific reasoning supporting such a determination," the court remanded the case to the district court. *Id.*

While *Mustangs Unlimited I* was pending on appeal, Ford moved for a preliminary injunction enjoining Unlimited from selling automobile accessories and other merchandise bearing counterfeits or confusingly similar variations of the Ford trademarks. In June 2006, the court entered a stipulated injunction under which Unlimited was enjoined from selling automobile accessories and other merchandise bearing counterfeits or confusingly similar variations of the Ford trademarks and from using or displaying the Mustang design on Unlimited's website and promotional materials. In addition, Unlimited was ordered to deliver all counterfeit goods it possessed to Ford's counsel for destruction.

Shortly after the injunction went into effect, however, Ford moved to hold Unlimited in contempt, alleging that Unlimited had violated the imposed injunction by continuing to sell unlicensed merchandise bearing Ford's marks. In support of its motion, Ford again submitted photographic evidence of counterfeit goods and a signed declaration by an investigator who had obtained those goods from Unlimited. The district court found Unlimited in contempt. Unlimited was fined $1,000, ordered to pay Ford's attorney's fees and costs in connection with the motion, and ordered to comply with the injunction.

After the case was remanded pursuant to *Mustangs Unlimited I*, the district court ordered the parties to file briefs as to whether Ford's evidence established extraordinary or exceptional circumstances sufficient to warrant Rule 60(b)(6) relief. In addition to violations pointed out previously in its filings with the district court, Ford presented new evidence that Mustangs Unlimited had continued to violate Ford's trademark rights, including the sale of counterfeit instrument panels bearing Ford trademarks. Unlimited continued to deny that Ford had met its burden in showing "exceptional circumstances."

In September 2007, the district court granted Ford's motion to set aside the consent judgment pursuant to Rule 60(b)(6), finding that Ford had established that extraordinary or exceptional circumstances warranted such relief. The totality of evidence, the district court concluded, indicated Unlimited's "substantial and continuing disregard for the bargain struck between the parties to resolve this case," which "necessitates a set-aside of the Consent Judgment to advance 'the interests of justice' in this instance." *Ford Motor Co. v. Mustangs Unlimited Inc.*, No. 90-CV-73933, 2007 WL 2584502, at *7 (E.D. Mich. Sept. 7, 2007). The court also found that it was unnecessary to hold an evidentiary hearing for purposes of disposing of Ford's Rule 60 motion, noting the court had received "extensive briefing" by the parties in prior hearings and filings. *Id.* at *8. The district court therefore granted Ford's motion to set aside the consent judgment without oral arguments. Unlimited appeals that order.

II.

"We review orders granting relief from a prior order under Rule 60(b) for abuse of discretion, but we review questions of law de novo."  *Mustangs Unlimited I*, 487 F.3d at 468 (quoting *United States v. Pauley*, 321 F.3d 578, 581 (6th Cir. 2003)) (internal quotation marks omitted).  Abuse of discretion requires an appellate court to establish "a definite and firm conviction that the trial court committed a clear error of judgment."  *Blue Diamond Coal Co. v. Trs. of UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir. 2001) (internal quotation marks and citations omitted).

A.

Unlimited first argues that the district court erred by not conducting a complete hearing prior to ruling on Ford's motion.  According to Unlimited, Ford's evidence "consisted primarily of hearsay in the form of declarations and out of court testimony where the veracity and credibility were in dispute," and therefore the district court should have conducted an evidentiary hearing before ruling on Ford's Rule 60 motion.

This court's *Mustangs Unlimited I* opinion imposed no explicit requirement upon the district court to hold any kind of evidentiary hearing.  This court merely instructed that "[u]pon remand . . . the district court should expressly determine whether—and, if so, how—Ford's evidence establishes extraordinary or exceptional circumstances sufficient to warrant Rule 60(b)(6) relief."  *Mustangs Unlimited I*, 487 F.3d at 470.  The instruction in *Mustangs Unlimited I* was to make "an explicit determination" as to whether "the circumstances herein are extraordinary or exceptional" and to give "specific reasoning supporting such a determination."  *Id.* The panel's instruction required analysis of the evidence already before the district court; it did not necessarily require a hearing.  No more specific instructions were given to the district court, so Unlimited's insinuation that a hearing was somehow mandated by this court's earlier hearing of this matter is incorrect.

Similarly, Sixth Circuit case law does not require a hearing before terminating a consent decree.  Unlimited cites *Heath v. DeCourcy*, which did say that "[m]odification of a consent decree

requires a complete hearing and findings of fact." 992 F.2d 630, 634 (6th Cir. 1993). However, in *Gonzales v. Galvin* this court subsequently clarified that "a 'complete hearing' of an issue does not necessarily require a full-blown evidentiary hearing." 151 F.3d 526, 535 (6th Cir. 1998). In *Gonzales*, the panel rejected a claim—similar if not identical to Unlimited's—that "the Sixth Circuit *requires* a district court to hold a formal evidentiary hearing prior to terminating a consent decree." *Id.* at 534. The court clarified that "[e]videntiary hearings are not necessary where the parties' briefs clearly set forth the relevant facts and arguments of a case such that a hearing would not add anything to the briefs, and where the court has sufficient evidence before it to make detailed factual findings." *Id.* at 535. The district court, therefore, violated no mandatory requirement when it declined to hold an evidentiary hearing before ruling on Ford's motion to set aside the consent judgement pursuant to Rule 60(b)(6).

Unlimited argues in the alternative that the district court's refusal to hold an evidentiary hearing constituted an abuse of discretion. This argument more closely follows our precedent. *See Gonzales*, 151 F.3d 526, 534 (6th Cir. 1998) ("We review for an abuse of discretion a district court's decision not to hold an evidentiary hearing before terminating a consent decree."). In this case, however, the district court explained that it considered an evidentiary hearing unnecessary, because both parties had extensively briefed the relevant matters during two years of court proceedings and supplemented their arguments with "numerous declarations and other documentary evidence to support their positions." *Ford*, 2007 WL 2584502, at *8. This judgment comports with this court's prior finding that "[w]hile, in reaching its conclusion, a court might find it useful to hear live testimony . . . a court may just as reliably evaluate . . . a paper record." *Gonzales*, 151 F.3d at 535.

Unlimited had plenty of opportunities to rebut the claims and evidence presented by Ford. Unlimited submitted declarations from its own witnesses—specifically Melissa Letendre, Unlimited's Operational Director, and Vincent Amberly, one of Unlimited's attorneys—in an attempt to do so. It also was permitted to raise its arguments at hearings conducted by the district

court on February 28, 2006, January 20, 2007, and August 17, 2007. Counsel for Unlimited also had the chance to question one of Ford's key witnesses, Scott Cambra, at Cambra's deposition. Unlimited therefore had ample opportunity to present evidence about the veracity or credibility of Ford's evidence, and the district court possessed ample evidence that supplied the context by which it could assess the testimony of Ford's witnesses. We, therefore, cannot say the district judge's decision to proceed without a final evidentiary hearing constituted a clear error of judgment.

B.

Unlimited also claims that the district court granted Ford's motion without making findings of fact to justify its holding. In *Mustangs Unlimited I*, this court asked the district court to engage in a "more searching examination of the facts of this case" and to "expressly determine whether—and, if so, how—Ford's evidence establishes extraordinary or exceptional circumstances." 487 F.3d at 470. Unlike the order reviewed in *Mustangs Unlimited I*, however, the order reviewed here explicitly finds facts, based on the record, as to the veracity of the evidence presented by Ford and Unlimited. In its order, the district court wrote that it found "[Ford's] evidence from 2005, 2006, and 2007 of continuing violations to be credible" and Unlimited's defenses to be wholly unconvincing. *Ford*, 2007 WL 2584502, at *7. The court also methodically documented its assessment of all of Ford's evidence presented during the course of this matter.

With regard to the evidence presented by Ford in 2005 that Unlimited was violating the consent agreement by selling unlicensed patches and fender covers, the district court noted that "[Unlimited] has not rebutted [Ford's] evidence that the infringing/counterfeit items were inventoried and offered for sale by [Unlimited], but rather tries to justify its conduct." *Id.* at *6. The court, in turn, found Unlimited's argument that it was permitted to sell "existing inventory" as part of a 2002 ancillary agreement between Ford and Unlimited unconvincing. "The 2002 Consent Judgment, on its face, makes no such exception that [Unlimited] could sell the infringing products that existed in its inventory before 2002." *Id.*

The district court found the license plate and lapel pins obtained by Ford from Unlimited were not licensed products, despite bearing Ford's mark. Similarly, the district court accepted the veracity of Ford's evidence that the instrument panel commissioned by Unlimited violated the consent agreement. The court rejected Unlimited's claim that Cambra had testified falsely at his deposition as a "conclusory assertion," and found that Unlimited "does not offer any substantive evidence to rebut [Ford's] 2007 instrument panel evidence." *Id.*

The district court also incorporated the fact-finding made in its earlier order holding Unlimited in contempt for violating the stipulated injunction. In the earlier order, the district court concluded that Unlimited was prohibited by both the consent agreement and the temporary injunction from producing clothing and other merchandise bearing Ford marks. The court also found that the sale of such merchandise after the injunction had gone into effect (and after the consent agreement had gone into effect) was undisputed by the parties.

Unlimited complains that the district court found the evidence it presented—such as the declarations of Melissa Letendre and Vincent M. Amberly—unpersuasive. This court, however, only reviews such credibility determinations for an abuse of discretion. *Scott v. Metro. Health Corp.*, 234 F. App'x 341, 363 (6th Cir. 2007) (unpublished) ("In a variety of contexts, assessments of credibility . . . are committed to the sound discretion of the lower tribunal; we do not disturb those assessments unless the aggrieved party demonstrates an abuse of discretion."); *see also Huff v. Metro. Life. Ins. Co.*, 675 F.2d 119, 123 (6th Cir. 1982). Upon review, we cannot say with conviction that this credibility determination amounted to an abuse of discretion by the district court. Ford has provided documentary evidence bolstering the statements of its declarants and, as the district court noted, Unlimited has generally only attempted to explain away the alleged violations rather than denying that it acted in the way alleged.

In sum, the district court made numerous factual findings to underpin its legal conclusions. The record fully supports these conclusions, and Unlimited, therefore, cannot obtain relief on the basis of insufficient fact-finding by the district court to support its Rule 60(b)(6) order.

C.

At the end of its order, the district court summarized why it concluded that the circumstances warranted relief under Rule 60(b)(6):

> It is clear to this Court, that given [Unlimited's] admitted confusion over the Consent Judgment's terms, combined with [Ford's] substantial evidence of violations that the Consent Judgment document is not, and has not been, a harmonious or effective resolution of the instant case. The Court agrees with [Ford] that [Unlimited's] post-2002 conduct, and subsequent post-hoc excuses for noncompliance, essentially amount to a repudiation of important terms of the Consent Agreement. The Court finds that adequate "exceptional or extraordinary circumstances" exist "in the interests of justice" to set-aside the 2002 Consent Judgment under Rule 60(b)(6) . . . .

*Ford*, 2007 WL 2584502, at *8. We review whether these factors and the others put forward by the district court constitute sufficient reasons for relief under Rule 60(b)(6).

In *Mustangs Unlimited I*, this court emphasized that "Rule 60(b) is 'circumscribed by public policy favoring finality of judgments and termination of litigation.'" 487 F.3d at 468 (quoting *Blue Diamond Coal Co. v. Trs. of UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir. 2001)). This court concluded in *Mustangs Unlimited I* that Rule 60(b)(6) relief is not warranted "whenever a settlement agreement has been breached." *Id.* at 470 (quoting *Harman v. Pauley*, 678 F.2d 479, 481 (4th Cir. 1982)). This circuit has required "something more" for Rule 60(b)(6) relief, something that amounts to an "unusual and extreme situation[] where principles of equity *mandate* relief." *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990).; *see also L.M. Leathers' Sons v. Goldman*, 252 F.2d 188, 190 (6th Cir.1958) (noting that relief under Rule 60(b)(6) is appropriate "whenever such action is appropriate to accomplish justice"). Rule 60(b)(6) eschews specific factors for determining whether relief is warranted, but the Supreme Court has cautioned that relief "should

only be applied in extraordinary circumstances." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988) (internal quotation marks and citation omitted).

In the opinion now reviewed, the district court acknowledged that conduct merely breaching a consent agreement was not a sufficient grounds for Rule 60(b)(6) relief. It found, however, that Unlimited's continuing violations went beyond mere breach and "essentially amount[ed] to repudiation" of the agreement. *Ford*, 2007 WL 2584502, at *8. The district court's language about repudiation derived from this court's opinion in *Aro Corporation v. Allied Witan Company*, which found that a party's "attempted repudiation" of a consent judgment "constituted full justification" for relief under Rule 60(b)(6). 531 F.2d 1368, 1371 (6th Cir. 1976).

Delineating the difference between repudiation and breach is unnecessary to resolve this case. In *Mustangs Unlimited I*, this court noted that "*Aro* . . . simply stands for the general rule that when considering a Rule 60(b)(6) motion, the trial judge should use his discretion to determine if the granting of such motion would further justice." 487 F.3d at 470 (internal quotation marks and citation omitted). The district court has done exactly that here.

In *Mustangs Unlimited I*, the court noted that "[i]f adequate relief is available through a separate lawsuit for breach of the settlement agreement, the court may leave the parties to that remedy and refuse to set the judgment aside." *Id.* at 469 (quoting *Moore's Federal Practice* § 60.48[3][d] (3d ed. 2000)). But when a party to a consent judgment repeatedly violates not only the agreement, but also an injunction attempting to enforce that agreement, the traditional remedies relied upon to enforce a consent agreement appear insufficient, and Rule 60(b)(6) may therefore be appropriate.

The district court also found that Unlimited's litigation strategy is probative for the purposes of its Rule 60(b)(6) order. Unlimited's continued insistence that it had not violated the consent agreement, the court concluded, indicated Unlimited's "confusion [as] to the operation of the

Consent Judgment."[1] The record supports the court's skepticism about the arguments offered by Unlimited in defense of its behavior. Unlimited's claim that the consent judgment does not cover clothing sales, for instance, ignored both the plain language of the consent judgment, which contained no limit restricting the ban on the use of Ford's marks to certain items, and basic trademark law. Unlimited's arguments that it has no duty under the consent judgment unless Ford reports an unlicensed sale to Unlimited runs contrary to this court's precedent. *See Rolex Watch U.S.A. v. Crowley*, 74 F.3d 716, 721 (6th Cir. 1996) (rejecting as "untenable" a defendant's attempt to defend a violation of a consent judgment in a trademark action "on the ground that . . . [plaintiff] should have provided them with notice" of alleged violations). Unlimited's claim that the consent judgment permits the sale of Unlimited's inventory at the time that the consent judgment was entered runs afoul of the parol evidence rule.[2] *Saulte Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 372–73 (6th Cir. 1998) (noting that consent judgments are governed by the words used in the instrument and that courts may not consider extrinsic testimony when terms are clear and unambiguous). Given the untenable nature of many arguments offered by Unlimited, one could conclude, as the district court did, that a party's "confusion" about the scope of a contract is so deep that justice requires rescinding the agreement.

Unlimited offers two equitable arguments in its favor. The first is an accusation about Ford's ulterior motives for filing its motion. Unlimited fears that Ford intends to prohibit Unlimited from selling under the "Mustangs Unlimited" name, as it is permitted to do under the terms of the consent

---

[1] The district court drew this language from this court's opinion in *L.M. Leathers' Sons v. Goldman*. 252 F.2d 188, 190 (6th Cir. 1958). In *L.M. Leathers' Sons*, this court affirmed a district court's vacation of judgment on the grounds that disputes subsequent to the entry of the consent judgment were so fundamental that they evinced "obvious confusion as to the intention of the parties." *Id.* at 189–90. This court in *Mustangs Unlimited I* also quoted the "obvious confusion" language. 487 F.3d at 470 n.2.

[2] In addition, Unlimited's argument ignores the district court's injunction, which required Unlimited to turn over all counterfeit merchandise to Ford.

judgment. The district court acknowledged this position but deemed the argument nothing more than Unlimited trying to "justify its conduct" by redirecting the blame toward Ford. The district court also noted Ford's argument that permitting Unlimited to use the business name "Mustangs Unlimited" was a "huge concession" by Ford during negotiations. *Ford*, 2007 WL 2584502, at *8. And contrary to Unlimited's claim, the motive was not ulterior; Ford acknowledged its intention to stop Unlimited from using the "Mustangs Unlimited" trade name given Unlimited's repeated transgressions. Unlimited's accusation of Ford having unclean hands, therefore, is not persuasive.

Second, Unlimited argues that even if it was responsible for breaches of the consent judgment, the only breaches Ford points to are minor—effectively constituting a couple hundred dollars of merchandise among a $20 million business. The district court did not consider the size of Unlimited's business, but it is not immediately clear why that factor would be relevant, given that the issue at hand is only the violation of the consent judgment. To the extent that Unlimited will be severely penalized by the vacating of the consent judgment, this result is merely the product of Unlimited's having gained a good bargain during the initial agreement with Ford. Unlimited's willingness to risk this windfall through obvious misconduct in clear violation of the consent decree is puzzling, but nothing about the parties' conduct tips the scales of equity in Unlimited's favor.

In sum, the district court followed the instructions given to it by this court in *Mustangs Unlimited I*; it offered a detailed account of its reasoning as to why the circumstances of this case were extraordinary or exceptional enough sufficient to warrant Rule 60(b)(6) relief. It also engaged in a "more searching examination of facts" and "expressly determine[d] whether—and, if so, how—Ford's evidence establishes extraordinary or exceptional circumstances." *Mustangs Unlimited I*, 487 F.3d at 470. Based on the evidence presented to the district court and its reasoning, the district court did not abuse its discretion in granting Ford's motion.

III.

For the foregoing reasons, the decision of the district is affirmed.