NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0160n.06

No. 21-2626

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Apr 07, 2023
DEBORAH S. HUNT, Clerk

SHARRON ROSE,

    Plaintiff-Appellant,

v.

OAKLAND COUNTY, MICHIGAN
TREASURER; CITY OF SOUTHFIELD,
MICHIGAN; SOUTHFIELD NEIGHBORHOOD
REVITALIZATION INITIATIVE, LLC,

    Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF
MICHIGAN

OPINION

Before: GIBBONS, GRIFFIN, and STRANCH, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** Oakland County took "absolute title" to Sharron Rose's home using the tax-foreclosure procedures under Michigan's General Property Tax Act (GPTA) to satisfy a tax debt of about $33,000. The home was estimated to be worth approximately $250,000, but the County never refunded the difference between its fair market value and the taxes owed. That difference was Rose's equity interest in the property. Rose unsuccessfully challenged this chain of events in Michigan state court as an unconstitutional taking under the United States and Michigan Constitutions. Caselaw regarding the Takings Clause evolved over time, which led Rose to bring this suit in federal court against the County and the subsequent purchasers of her home—the City of Southfield and the Southfield Neighborhood Revitalization Initiative, LLC (SNRI)—seeking just compensation.

The district court dismissed Rose's case as barred by res judicata and *Rooker-Feldman*. Rose did not appeal. Instead, after the time to appeal had elapsed, she moved to reopen the case under Federal Rule of Civil Procedure 60(b)(6) for reconsideration of her claims on the merits, citing a "sea change" in the decisional law of takings, res judicata, and *Rooker-Feldman* that had occurred after judgment was entered. For the reasons explained below, we **AFFIRM** the district court's decision not to reopen the case.

## I.   BACKGROUND

The basic facts are undisputed. After Oakland County took title to Rose's Southfield, Michigan home in 2017, no public auction was held. Instead, the County sold the property to the City of Southfield for the amount of Rose's tax debt, the "minimum bid" authorized by the GPTA at the time. The City then conveyed the property for a nominal price of $1 to SNRI, an entity that renovates and resells "blighted" homes. Rose was never compensated for her equity interest.

The law of takings has changed since the County first foreclosed on Rose's property, and even since the briefing in this appeal. The following three developments in takings law underlie Rose's motion to reopen the case.

First is the Michigan Supreme Court's decision in *Rafaeli, LLC v. Oakland County*, 952 N.W.2d 434 (Mich. 2020), issued five months after the district court dismissed Rose's case. Two former property owners sued Oakland County and its Treasurer in Michigan state court, alleging the defendants committed unconstitutional takings by retaining the proceeds from the tax-foreclosure sales of their properties, which exceeded the taxes they owed. *Rafaeli*, 952 N.W.2d at 440-41. The Michigan Supreme Court held that the "retention of those surplus proceeds is an unconstitutional taking without just compensation" under the Michigan Constitution. *Id.* at 441. It also held that "the GPTA is unconstitutional as applied to former property owners whose

properties were sold at a tax-foreclosure sale for more than the amount owed in unpaid taxes[.]" *Id.* at 461. *Rafaeli*, in sum, recognized a former property owner's right to "surplus proceeds" from a tax-foreclosure sale, but not to non-monetized "equity held in property generally." *Id.* at 466 & n.134.

Second, the Michigan legislature amended the GPTA in response to *Rafaeli*. The amendments, which went into effect in January 2021, generally require a foreclosed property to be sold for fair market value rather than merely the amount of the tax debt. *See* Mich. Comp. Laws § 211.78m (2020). The amendments also created a path for former property owners to claim surplus proceeds, which represent the monetized value of the former owner's equity interest. *See* Mich. Comp. Laws § 211.78t (2020).

Finally, we issued *Hall v. Meisner* shortly before oral argument in this appeal, holding that an unconstitutional taking occurs when a Michigan county takes "absolute title" to a home under the GPTA without paying just compensation for the former owner's equity interest, *i.e.*, the property's value in excess of the tax debt. 51 F.4th 185, 196 (6th Cir. 2022).

With these developments in mind, we turn to the factual and procedural background.

### A.     The Foreclosure and Sale of Rose's Property

Michigan's GPTA authorizes the foreclosure and subsequent sale of tax-delinquent real property to recover unpaid taxes, penalties, interest, and fees. In this case, the Oakland County Treasurer foreclosed on Rose's property as part of a "bulk foreclosure" initiated in Oakland County Circuit Court in 2016. The GPTA requires that before a foreclosure judgment becomes final, property owners must be "provided with various notices of the foreclosure process and of [their] right to 'redeem' the property—meaning the right to remove it from that process—by payment of all the taxes, interest, penalties, and fees due for the property." *Id.* at 188. Despite receiving these

notices, Rose did not redeem, and the circuit court entered "a foreclosure judgment that vested 'absolute title' to the property in the county . . . effective March 31 of the following year." *Id.* (quoting Mich. Comp. Laws § 211.78k(6)). The foreclosure judgment thus became final in March 2017.

The County did not sell Rose's property at a public auction; the City purchased it pursuant to its statutory right of first refusal. At the time of the sale, the GPTA permitted the state or a municipality to purchase a foreclosed property for the "minimum bid," consisting of the amount of taxes, interest, and other costs owed on the property. Mich. Comp. Laws § 211.78m(1), (16) (2015). Accordingly, the City paid $32,677 for Rose's property, representing approximately $26,000 in unpaid taxes, plus interest and costs. Rose's property was free of any mortgage or other encumbrance, and Rose estimates its fair market value was approximately $250,000.

The City then conveyed the property to SNRI for $1. SNRI is a limited liability corporation whose sole member is the Southfield Non-Profit Housing Corporation, and whose mission is to renovate, repair, and rehabilitate tax-foreclosed properties, and then market them for sale to financially qualified individuals and families. Rose still resides at the property under an escrow agreement. But she was never compensated by the County, City, or SNRI (collectively, "Defendants") for her equity interest in the property after her tax debt was satisfied.

### B.     Rose's 2017 State Court Lawsuit

A few months after the foreclosure judgment became final, Rose sued the Oakland County Treasurer in state court alleging that an "unconstitutional taking" had occurred and requesting the "court order a trial to determine Plaintiff's just compensation as required by the US and Michigan constitutions." The County moved for summary disposition, which the state court granted on multiple grounds. The state court held that it lacked subject matter jurisdiction to modify the

judgment of foreclosure; that Rose lacked standing to raise a due process challenge to the notices of foreclosure that she received; and that no taking had occurred because Rose had forfeited the property under Mich. Comp. Laws § 211.78g(1) by failing to pay her taxes.

Rose did not timely appeal, but later applied for leave to file a delayed appeal, seeking to challenge the dismissal of her procedural due process claim—not her takings claim. *See Rose v. Treasurer of Oakland Cnty.*, No. 2017-160234-CH, Appl. for Leave to Appeal (Mich. Ct. App. Nov. 18, 2018).[1] The Michigan Court of Appeals denied Rose's application in one sentence: "The Court orders that the application for delayed appeal is DENIED for lack of merit in the grounds presented." *Rose v. Meisner*, No. 346309 (Mich. Ct. App. Apr. 4, 2019) (order). Rose did not pursue a further appeal to the Michigan Supreme Court.

### C. Rose's 2019 Lawsuit in Federal District Court

In October 2019, Rose sued in federal court, naming the City of Southfield and SNRI as defendants in addition to the Oakland County Treasurer. The operative Complaint alleged excessive fines, procedural due process, and takings claims in violation of the United States Constitution. Defendants moved to dismiss under Federal Rules 12(b)(1) and 12(b)(6), and Rose moved to file a second amended complaint. The district court granted Defendants' motions and denied Rose's in a February 2020 order.

The district court held that it lacked jurisdiction because "this case amounts to an appeal of the state court judgment" under the *Rooker-Feldman* doctrine. *Rose v. Oakland Cnty. Treasurer*, No. 19-13066, 2020 WL 871304, at *1 (E.D. Mich. Feb. 21, 2020). Because Rose sought to "strike down" the foreclosure as an "unconstitutional taking," her suit amounted "to a

---

[1] Though Rose's leave application is not in this record, we may consider documents referenced in the pleadings that are "integral to the claims," as well as matters of public record. *Com. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007).

direct assault on the state court judgment of foreclosure[.]" *Id.* at *4 (alteration and citation omitted). In the alternative, the court held that "[e]ven if this lawsuit is not barred by the *Rooker-Feldman* doctrine, the claims certainly are precluded by *res judicata*, because the same takings, due process, and excessive fines claims were raised, or could have been raised, in the prior state court lawsuit, which was resolved by a final judgment that was affirmed on appeal." *Id.* at *5. Finally, the court noted that Rose's proposed second amended complaint "suffers from the same defects as the prior complaints," and denied leave to amend. *Id.* at *1. The district court entered judgment in favor of Defendants. Rose did not appeal.

### D. Rose's Motions to Reopen

In July 2020, Rose moved to set aside the judgment in the original state court bulk foreclosure action on the basis that the applicable provisions of the GPTA were likely to be struck down as unconstitutional by the Michigan Supreme Court in *Rafaeli*. The state court denied the motion for lack of jurisdiction to "modify a previously entered judgment of foreclosure." R. 39-3, Oakland Cnty. Cir. Ct. Op. & Order, PageID 1570. The court also explained that Rose's claim to equity "had no bearing on whether the foreclosure judgment should be modified or set aside" and that this issue "should have been addressed by a motion in another case." *Id.*, PageID 1573.

Unsuccessful in setting aside the foreclosure judgment in state court, on January 3, 2021, Rose moved to reopen her federal case under Rule 60(b), requesting reconsideration of her claims on the merits. Rose argued that changes in decisional law following the dismissal of her case—including the Michigan Supreme Court's decision in *Rafaeli*, legislative amendments to the GPTA, and several recent Sixth Circuit decisions—constituted special circumstances warranting relief from judgment under Rule 60(b)(6).

The district court rejected these arguments and declined to reopen the case. *Rose v. Oakland Cnty. Treasurer*, No. 19-13066, 2021 WL 2562419, at \*1 (E.D. Mich. Apr. 28, 2021). The court concluded that Rose had "not established that any extraordinary and compelling circumstance warrants relief from the judgment of dismissal issued more than a year ago, nor ha[d] she pointed to any change in the facts or the law that warrants revisiting the Court's prior ruling." *Id.* at \*6. In May 2021, Rose filed a motion for reconsideration raising largely the same arguments, which the district court also denied. Rose timely appealed, challenging the district court's refusal to reopen the case under Rule 60(b)(6).

## II. ANALYSIS

The overarching question presented on appeal is whether these changes in decisional law, coupled with the other special circumstances in this case, warrant relief under Rule 60(b)(6), *i.e.*, reopening the case for reconsideration of Rose's takings claim[2] on the merits.

### A. Standard of Review and Application

A district court's denial of a Rule 60(b)(6) motion is reviewed for an abuse of discretion.[3] *Browder v. Dir., Dep't of Corr. of Ill.*, 434 U.S. 257, 263 n.7 (1978); *Blue Diamond Coal Co. v. Trs. of UMWA Combined Ben. Fund*, 249 F.3d 519, 524 (6th Cir. 2001). That standard is met when we are left with "a definite and firm conviction that the trial court committed a clear error of judgment." *Blue Diamond*, 249 F.3d at 524 (quoting *Davis v. Jellico Cmty. Hosp., Inc.*, 912 F.2d

---

[2] Rose pleaded three constitutional claims in the operative complaint—procedural due process, excessive fines, and takings claims—but her arguments on appeal focus solely on the takings claim. Because her appeal made no mention of her excessive fines or procedural due process claims, Rose has abandoned them. *See Doe v. Mich. State Univ.*, 989 F.3d 418, 425 (6th Cir. 2021). Additionally, while her briefs reference an unjust enrichment claim, no such claim was alleged in this lawsuit.

[3] Rose included subsections (b)(1) and (b)(5) in her original motion but raises only subsection (b)(6) on appeal. The district court noted that Rose disavowed any reliance on the first two subsections at oral argument. *Rose*, 2021 WL 2562419, at \*2.

129, 133 (6th Cir. 1990)). Importantly, "an appeal from denial of Rule 60(b) relief does not bring up the underlying judgment for review." *Browder*, 434 U.S. at 263 n.7.

Rule 60(b) permits a court to "relieve a party or its legal representative from a final judgment, order, or proceeding" for enumerated reasons, including a catchall provision that encompasses "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). A party may qualify for Rule 60(b)(6) relief by demonstrating "an applicable change in decisional law, coupled with some other special circumstance[.]" *Blue Diamond*, 249 F.3d at 524. Relief is appropriate "where the interest in finality is somehow abrogated," or "when a dispositive change in decisional law occurs while a timely appeal is still pending." *Id.* at 528.

The City of Southfield raises two preliminary issues pertaining to Rule 60(b)(6). First, it contends that Rose's arguments go to the merits of the underlying dismissal order, which she failed to timely appeal. The City urges us to disregard these arguments because Rule 60(b) is not a substitute for appealing the underlying dismissal. While that is true, Rose's arguments focus on recent developments in decisional law that might warrant reopening her case. Her arguments fall within the scope of Rule 60(b)(6) review. *See id.* at 524.

Second, the City contends that Rose's motion is untimely under Rule 60(c) because she filed her motion about eleven months after the district court's judgment, and she does not explain her delay. But Rule 60(c) does not establish a specific timeframe to request relief. It requires only that a Rule 60(b)(6) motion be "made within a reasonable time." Fed. R. Civ. P. 60(c)(1). To determine reasonableness, this court "examine[s] the time between the date of the decision constituting a change in the law and the date that the Rule 60(b)(6) motion was filed." *Miller v. Mays*, 879 F.3d 691, 699 (6th Cir. 2018). Rose's motion to reopen is based not only on the July 2020 decision in *Rafaeli*, but also on the GPTA amendments enacted in late December 2020, which

became effective on January 1, 2021. Rose's motion to reopen was filed a mere two days later, on January 3, 2021. That is within a reasonable time.

## B. Res Judicata

Rose's leading argument is that the district court should have reversed its preclusion holding based on new developments in res judicata jurisprudence. Citing the Supreme Court's decision in *Knick v. Township of Scott*, 139 S. Ct. 2162 (2019), and our recent decision in *Harrison v. Montgomery County*, 997 F.3d 643 (6th Cir. 2021), Rose argues that she was caught in a preclusion trap: she was forced to seek just compensation in state court before she could bring a takings claim in federal court, but having lost in state court, she is unfairly precluded from litigating in federal court. Rose contends that under *Knick* and *Harrison*, we are no longer required to give the state court decision in her first lawsuit preclusive effect. Rose also argues the district court erred in finding both that the state court judgment was a final adjudication on the merits, and that the City of Southfield and SNRI were in privity with the Oakland County Treasurer.

"Federal courts must give the same preclusive effect to a state-court judgment as that judgment receives in the rendering state." *Buck v. Thomas M. Cooley L. Sch.*, 597 F.3d 812, 816-17 (6th Cir. 2010) (quoting *Abbott v. Michigan*, 474 F.3d 324, 330 (6th Cir. 2007)). Rose's "prior litigation took place in Michigan, which employs a 'broad view of res judicata.'" *Id.* at 817 (quoting *In re MCI Telecomms. Compl.*, 596 N.W.2d 164, 183 (Mich. 1999)). Under Michigan law, res judicata "bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Adair v. State*, 680 N.W.2d 386, 396 (Mich. 2004). Res judicata is an umbrella term that refers to two distinct concepts: issue preclusion (also called collateral estoppel), and claim preclusion (confusingly also called res judicata). *See Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). Claim

preclusion "involves preclusion of entire claims," while issue preclusion "focuses on specific issues within an action." *Mecosta Cnty. Med. Ctr. v. Metro. Grp. Prop. & Cas. Ins. Co.*, 983 N.W.2d 401, 405-06 (Mich. 2022). Under Michigan law, claim preclusion "bars a second action on the same claim if '(1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first.'" *Id.* at 405 (quoting *Foster v. Foster*, 983 N.W.2d 373, 379 (Mich. 2022)).

### 1.    The Preclusion Trap

We start with Rose's argument that because she was required to exhaust her state law remedies prior to filing a takings claim in federal court, it is unfair for the state court judgment to preclude her federal takings claim.

Before *Knick*, the Supreme Court had "held that a property owner whose property has been taken by a local government has not suffered a violation of his Fifth Amendment rights—and thus [could not] bring a federal takings claim in federal court—until a state court has denied his claim for just compensation under state law." *Knick*, 139 S. Ct. at 2167. Under that regime, "if a State provide[d] an adequate procedure for seeking just compensation, the property owner [could not] claim a violation of the Just Compensation Clause until it ha[d] used the procedure and been denied just compensation." *Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 195 (1985), *overruled by Knick*, 139 S. Ct. 2162. In that vein, we held in *Wayside Church v. Van Buren County*, 847 F.3d 812, 821-22 (6th Cir. 2017), that takings claims arising from tax-foreclosure sales under Michigan's GPTA must be litigated in state court before relief could be sought in federal court. Michigan's state court procedures provided an adequate remedy, *Wayside Church* reasoned, because state courts exercise concurrent jurisdiction over takings

claims, and Michigan's statutory scheme permitted the litigation of takings claims in state circuit court. *See id.*

Under *Williamson County* and *Wayside Church*, a property owner like Rose would not have a ripe federal takings claim until her state court claim for just compensation had failed. *See Knick*, 139 S. Ct. at 2167. But a state court's resolution of the claim under state law is generally preclusive in any subsequent federal suit. The takings plaintiff thus found "himself in a Catch-22": he could not "go to federal court without going to state court first;" but if he went to state court and lost, his claim would be barred in federal court. *Id.* In 2019, *Knick* overruled this state-litigation requirement, concluding that it imposed "an unjustifiable burden on takings plaintiffs." *Id.*

Rose also points to *Harrison*, decided after her Rule 60(b)(6) motion was denied, which applied *Knick* to an Ohio tax-foreclosure case. *Harrison*, 997 F.3d at 645-46. After the county foreclosed on her home and transferred it to a landbank, Harrison brought a federal takings claim, alleging that the home's fair market value was more than the property taxes owed, and that she "never received the surplus equity because the [Ohio] statute offers no way to pay it." *Id.* at 646. The district court granted the county's motion to dismiss on the grounds that "claim preclusion barred Harrison's lawsuit because she could have raised a federal takings claim at several points during the foreclosure process." *Id.* *Harrison* declined to hold that the plaintiff's federal takings claim was precluded by the foreclosure action, finding that the third element of claim preclusion—that a claim was or *could have been litigated* in the first suit—had not been met. *Id.* at 648-49. "When impediments exist or when the opportunity to raise the federal claim had not yet arisen in the prior state court action, 'it is unfair to preclude' a litigant from bringing another action that raises 'phases of the claim' that he 'was disabled from presenting in the first' action."

*Id.* at 648 (quoting Restatement (Second) of Judgments § 26 cmt. c (Am. Law Inst. 1982)). We reasoned that under *Knick*, property owners are no longer required "to invoke any potential state procedures for receiving compensation for the taking" and can go directly to federal court as soon as the property is transferred. *Id.* at 649.

*Harrison* is distinguishable because it dealt with the claim-preclusive effect of a state court *foreclosure judgment*. It did not address a *separate state court action* challenging a post-foreclosure sale as an unconstitutional taking. The *Harrison* plaintiff did not bring a takings claim under state or federal law prior to filing her federal suit—defendants argued only that she *could have* done so as a defense to the foreclosure action. By contrast, Rose's state court complaint alleged that Oakland County took her property without paying just compensation under the Takings Clauses of both "the U.S. and Michigan constitutions." R. 4-2, PageID 205. As detailed below, this claim was dismissed for failure to state a claim—a holding Rose never appealed.

In other words, Rose actually litigated her takings claim in state court, and this fact dooms her case. *See Moore v. Hiram Twp.*, 988 F.3d 353, 360-61 (6th Cir. 2021) (holding that where the plaintiff actually litigated his federal constitutional claim in a state administrative proceeding, res judicata barred him from relitigating the claim in federal court). The posture of Rose's case is similar to our decision in *Hall* that affirmed the dismissal of takings claims where the plaintiffs had "already sued and lost on claims arising from the very same occurrence that they [sought] to relitigate here." *See Hall v. Meisner*, Nos. 21-1700/21-2956, 2022 WL 7478163, at *1 (6th Cir. Oct. 13, 2022). *Hall* held that the plaintiffs "simply have not provided us with any lawful basis, under Michigan law," to avoid res judicata. *Id.*

Rose contends that it would be unfair to preclude her takings claim under *Harrison* because her claim could not have been litigated in state court at that time; prior to *Rafaeli*, the Michigan

Court of Appeals had ruled that no taking occurred under the GPTA, which provided that the property was "forfeited." The Oakland County court did dismiss Rose's "unconstitutional takings" claim holding that "[p]roperty properly forfeited pursuant to state law and in accordance with due process is not subject to a [t]akings claim," citing *Bennis v. Michigan*, 516 U.S. 442, 452 (1996) and Michigan's GPTA. R. 4-4, PageID 359. In *Rafaeli*, the Michigan Supreme Court overturned this understanding of forfeiture, explaining that it "improperly conflated the meaning of 'forfeiture' in an unrelated area of law," *i.e.*, civil-asset forfeiture under *Bennis*, "with the meaning of 'forfeiture' as expressly described under the GPTA." 952 N.W. 2d at 447-48.

This clarification in the law, however, is not the type of "formal barrier" to litigation that *Harrison* addressed. Formal barriers are "limitations on the competency of the system of courts in which the first action was instituted," or limitations stemming from "the separation of law from equity[.]" Restatement (Second) of Judgments § 26 cmt. c. Rose identifies no such barriers to her takings claim in the earlier state court action. Instead, she contends that the state court's judgment was wrong. This is not enough to avoid res judicata as it is "irrelevant . . . 'that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case.'" *Moore*, 988 F.3d at 358 (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)).

Rose also asserts that she could not have litigated her takings claim in the state court because, prior to the 2020 GPTA amendments, § 211.78k prohibited any relief except for due process violations. But § 211.78k posed no barrier to the plaintiffs' takings claims in *Rafaeli*, also decided before these amendments, which recognized valid takings claims for "surplus proceeds" (as opposed to the non-monetized equity interest Rose sought to vindicate) under the Michigan Constitution. 952 N.W.2d at 466. The GPTA's purported restrictions were not a jurisdictional or procedural barrier to the *Rafaeli* plaintiffs' takings claims, so they are not a barrier to Rose's.

Rose has not demonstrated that her takings claim falls within the preclusion trap described in *Knick* and *Harrison*, because her claim was actually litigated. Res judicata remains a valid basis for barring her takings claim.

### 2.      Final Adjudication on the Merits and Privity

Rose raises two more arguments against res judicata—that the state court judgment did not constitute a final adjudication on the merits, and that the City of Southfield and SNRI are not in privity with the Oakland County Treasurer.

As to finality, it is true that the state court based its summary disposition order on several grounds, including lack of subject matter jurisdiction and lack of standing, which ordinarily would not be a dismissal on the merits. But these holdings did not relate to Rose's takings claim. The jurisdiction holding related only to the court's ability to modify the judgment of foreclosure, which is not the remedy for a takings claim. And the standing holding related only to Rose's standing to bring a due process challenge under § 211.78*l* to the notices of foreclosure she received. A takings claim "is distinct from a claim of property deprivation without due process" claim. *Rafaeli*, 952 N.W.2d at 448.

The state court dismissed Rose's takings claim for the independent reason that she failed to state a claim, reasoning that her property "was not taken by the Oakland County Treasurer" but "forfeited" under the GPTA and *Bennis*, 516 U.S. at 452. R. 4-4, PageID 359. This holding falls under Michigan Court Rule 2.116(C)(8), which is "necessarily a decision on the merits," after which Rose "should not be allowed to refile the same suit against the same defendant and dismissal should therefore be with prejudice." *ABB Paint Finishing, Inc. v. Nat'l Union Fire Ins. Co.*, 567 N.W.2d 456, 458 (Mich. Ct. App. 1997). The court's dismissal of Rose's takings claim is a final

decision on the merits that precludes her federal lawsuit.[4] Rose never appealed this aspect of the dismissal order (though she appealed other aspects), and res judicata bars "relitigation of an unappealed adverse judgment[.]" *Moitie*, 452 U.S. at 395.

As to privity, *Hall* held that "the County alone" is liable for a takings claim like the one Rose has alleged, so she would be unable to pursue this claim against the City of Southfield and SNRI even if it were not barred by res judicata. *See Hall*, 51 F.4th at 196. In any event, Rose apparently abandoned this argument in her reply brief.

In sum, the law has changed since the state court's dismissal of Rose's takings claim, and it is unfortunate that Rose cannot benefit from those changes. The outcome here, however, is dictated by the unique circumstances of the record before us. Because Rose's taking claim was resolved by the state circuit court in a final decision on the merits, the district court did not abuse its discretion in finding that res judicata prevented Rose from relitigating the claim in her federal lawsuit.

## C.    The *Rooker-Feldman* Doctrine

In denying Rose's Rule 60(b)(6) motion, the district court also declined to revisit its holding that it lacked subject matter jurisdiction to hear Rose's takings claim pursuant to the *Rooker-Feldman* doctrine, finding that her suit amounted to an impermissible appeal of the judgment of foreclosure. Rose contends that our cases undercut the *Rooker-Feldman* rationale for

---

[4] Because the state circuit court's order is the operative judgment for res judicata purposes, we need not determine whether the Court of Appeals' denial of Rose's leave application "for lack of merit in the grounds presented" was a final decision on the merits, as Defendants argue. *See Halbert v. Michigan*, 545 U.S. 605, 618 (2005) (cautioning that when a Michigan Court of Appeals "denies leave using the stock phrase 'for lack of merit in the grounds presented,' its disposition may not be equivalent to a 'final decision' on the merits," but "may simply signal that the court found the matters asserted unworthy of the expenditure of further judicial resources.").

dismissal, citing our decisions in *VanderKodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397 (6th Cir. 2020) and *In re Lowry*, No. 20-1712, 2021 WL 6112972 (6th Cir. Dec. 27, 2021).

"The *Rooker-Feldman* doctrine bars lower federal courts from conducting appellate review of final state-court judgments because 28 U.S.C. § 1257 vests sole jurisdiction to review such claims in the Supreme Court." *VanderKodde*, 951 F.3d at 402 (quoting *Berry v. Schmitt*, 688 F.3d 290, 298 (6th Cir. 2012)). The scope of the doctrine is limited—it "applies only to the 'narrow' set of 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Id.* (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

To determine whether *Rooker-Feldman* bars a claim, we look to the "'source of the injury the plaintiff alleges in the federal complaint.' If the source of the plaintiff's injury is the state-court judgment itself, then *Rooker-Feldman* applies. 'If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim.'" *Id.* (first quoting *McCormick v. Braverman*, 415 F.3d 382, 393 (6th Cir. 2006), then quoting *Lawrence v. Welch*, 531 F.3d 364, 368-69 (6th Cir. 2008)). "A court cannot determine the source of the injury 'without reference to [the plaintiff's] request for relief." *Id.* (quoting *Berry*, 688 F.3d at 299) (alteration in *Berry*).

The district court held that both Rose's request "to recover good title to her home" *and* her request to recover the value of her lost equity are barred by the state court judgment of foreclosure. *Rose*, 2021 WL 2562419, at *5-*6. The latter holding goes too far. For the takings claim, the source of Rose's injury is the County's failure to compensate Rose for her equity interest, not the foreclosure itself. "The remedy for a taking of private property is just compensation," not "return

of the property." *See Rafaeli*, 952 N.W.2d at 448-49. While the request for the court to "strike down the foreclosure" is a direct attack on the state court foreclosure judgment, Rose's claim for just compensation is independent and therefore not barred by *Rooker-Feldman*.

*Lowry* also indicates that Rose's takings claim is independent from the foreclosure judgment. *See* 2021 WL 6112972, at *1. *Lowry* involved a tax-foreclosure sale, and the same group of defendants that Rose sued. *Id.* at *2. *Lowry* held that *Rooker-Feldman* did not bar a federal bankruptcy court from hearing a fraudulent transfer claim under the bankruptcy code because even though the claim was "closely related to the state foreclosure judgment," the court could "assume that the state court reached a proper foreclosure judgment, and then independently decide whether the foreclosure could be avoided as a fraudulent transfer[.]" *Id.* at *3. Likewise, Rose's takings claim is an independent claim because we can assume the foreclosure judgment was proper and then separately decide whether Rose was justly compensated for the taking.

The district court erred in applying *Rooker-Feldman* to avoid ruling on the merits of Rose's takings claim. This error, however, was harmless. As explained above, the district court properly held that res judicata barred the claim.

### III.  CONCLUSION

For the foregoing reasons, the district court's decision declining to reopen the case under Rule 60(b)(6) is **AFFIRMED.**